## LEACH *vs.* BEARDSLEE.

In the absence of clear stipulations in contracts, usage of trade or business is often proved, to show the actual intent and purpose of the parties; and a general usage, affecting any branch of business, furnishes good evidence of what is regarded as right and reasonable in that respect; so that negligence or misconduct can not be imputed to a party who conforms to such usage.

The plaintiff delivered to the defendant, who was a drover, certain oxen, to be driven to the city of New York, and there sold, for a commission, in the usual and customary manner. The defendant, having sold said oxen, received one note, for the price both of them, and of his own oxen, sold at the same time, and which he retained in his own possession. Before the maturity of such note, the makers thereof became insolvent. Held, 1. that, in the absence of specific instructions, as to the manner of selling such oxen, the implied undertaking of the defendant was, to sell them in the customary manner. 2. That the custom of drovers, in the city of New York, in reference to such sale, might be shown,—not for the purpose of contradicting or controlling the terms of the contract, definitely expressed, but, to show the extent of the duty and obligation of the defendant. 3. That the taking the note in question, did not, *per se*, render the defendant liable to the plaintiff, for the price of the oxen, and, if he had conformed to such custom, he incurred no liability thereby.

THIS was an action on the case, brought to recover the value of certain oxen, delivered by the plaintiff to the defendant, as a drover.

The cause was tried before the jury, at Danbury, October term, 1852. On the trial, the plaintiff claimed, that the defendant had received his oxen, to be by him sold on commission, in the city of New York, for the plaintiff, with in-

structions from the plaintiff, to sell for cash only, and not on credit,—that they were, by the defendant, sold, not for cash, but on credit, contrary to the plaintiff's instructions ; and that the price for which they were so sold had never been paid to the plaintiff, although the same had been demanded of the defendant, prior to the commencement of the suit.

The defendant claimed, that he had proved, that he was a drover, engaged in the business of driving fatted cattle, from this state to the city of New York, and there selling them to butchers, on commission, and that he had been so employed, for a period of more than fifty years,—that the usage and custom of such drovers was, to sell to butchers, on a short credit,—and that, generally, cattle could not otherwise be sold to them ; that the plaintiff's cattle were delivered to him, to be driven to the city of New York, and there sold on commission, without any instructions whatever, as to the manner in which they were to be sold, or as to the credit to be given on the sale,—that he accordingly drove them to the city of New York, and there sold them to Loverius & Leonard, butchers in said city, then in good standing and credit, for the sum of $107.50, upon a credit of twenty days,—the usual credit given on such sales,—that, at the same time, he sold to them another ox belonging to himself, for the sum of $65.75, upon the same credit, and took the note of Loverius & Leonard, for the sum of $173, the price of the three oxen, payable to himself, or order, twenty days from date, which was the 14th day of February, 1848 ; that, before said note became due, the makers thereof failed and became bankrupt, and that no part of the note had ever been paid. There was no discrimination made, in the note, between the price of the plaintiff's oxen, and that of the defendant's ox.

The defendant further offered evidence, to prove that it was the usage of said drovers, when they sold to one butcher, cattle belonging to different persons, or one firm of butchers, to take but one note for the aggregate amount, payable to

the drover selling them, that he might collect the amount, and pay over the same to the different owners of the cattle ; and that it was never their practice, to take separate notes for the cattle, so sold. To the admission of this evidence, the plaintiff objected, but the court admitted the same. There was no evidence, that the defendant ever offered said note to the plaintiff, or that the plaintiff ever demanded it of the defendant. But the defendant testified, that, after it was protested for non-payment, he informed the plaintiff of what had been done, and told him that he would do the best he could to collect the note ; and that the plaintiff should have the first money collected on the note ; to which the plaintiff made no reply ; that he afterwards told the plaintiff, that he had seen the makers of the note, and had collected nothing from them ; that the plaintiff said, " You have never given me a note,"—to which the defendant replied, " You ought not to have it, as the price of one of my oxen was included in the note." In a subsequent conversation between the parties, the plaintiff informed the defendant, that the instructions were to sell for cash ; and payment was demanded.

The plaintiff claimed, that, even if the jury should find, that the defendant was not limited to a sale for cash, yet, upon the facts claimed by the defendant, he, in selling the cattle upon a credit, and taking a note for the same, had made himself liable to the plaintiff, for the price of the cattle ; and that the plaintiff had a right, in this action, to recover the same ; especially, as the defendant had never transferred, or offered to transfer, said note, or any interest therein, to the plaintiff, or give him any control or management thereof ; and requested the court to charge the court accordingly. The court did not so instruct the jury, but did instruct them, that, if they found, that the plaintiff delivered his oxen to the defendant, as a drover, to be by him driven to New York, and there sold upon a commission for the benefit of the plaintiff, without any instructions as to the mode and manner of selling them, the implied undertaking of the defend-

ant was, to sell them, in the usual and customary manner. And that, if it was the general usage and custom of drovers, to sell cattle, belonging to different persons, to one person or firm, and take one note for the same, payable to himself, for greater convenience in collecting the money, the defendant, in taking the note in the manner proved, did not, thereby, render himself liable to the plaintiff, in the present action,—provided that, in so doing, he had not departed from such general usage and custom.

The jury having returned a verdict for the defendant, the plaintiff moved for a new trial ; and the questions arising thereon, were reserved for the advice of this court.

*Hawley*, for the plaintiff, contended, 1. That the defendant, by taking the note in his own name, embracing, without discrimination, moneys due to himself, with those arising from the sale of the plaintiff's oxen, became personally liable to the plaintiff. He thereby disposed of the proceeds of the plaintiff's cattle, in a way to which he never assented, and deprived him of the power of calling on the purchaser. The plaintiff had no control of the note.

2. That the defendant was liable, for having mingled the proceeds of the plaintiff's oxen, with his own claim, so that they could not be distinguished,—like a trustee who unites a trust fund with his own,—or an executor, who takes, for a debt due to his testator, an obligation in his own name,— or an agent, who takes, for a debt due his principal, a note specially endorsed to himself. 12 Pick., 376. 1 Sto. Eq., 468. 2 *id.*, 1270. *Floyd* v. *Day*, 3 Mass. R., 403. *Holmes & Drake* v. *DeCamp*, 1 John., 34. 14 E. C. L., 20. Paley's Agency, 27, 44.

3. That any usage, inconsistent with this doctrine, would be void. *Frith* v. *Barker*, 2 John., 335. 1 Hall, 602. The usage, to be good, must be general, uniform, and known to the plaintiff. Chitt. Con., 20. *Hull* v. *Wood*, 11 E. C. L., 313. 1 Stark., 487. 2 Sumner, 377.

---

---

*Dutton*, for the defendant, contended, 1. That the charge was correct, and the evidence of usage was admissible. *Barber* v. *Brace*, 3 Conn. R., 9. Custom is evidence of the intention of the parties. The plaintiff assented, in the present case, to sell oxen on the usual terms.

2. That it was for the interest of both parties, that the note should be given as it was.

3. That the plaintiff sustained no injury by this. He employed the defendant, as an agent, to sell in the usual and customary manner; and there is always a presumption, that men are acquainted with a general usage.

4. That the rule, referred to by the plaintiff, as to the duty of an agent, applied only to cases, not affected by agreement or usage.

CHURCH, C. J. We infer, from the verdict of the jury, that the claim of the plaintiff, that his instructions to the defendant were, to sell for cash, and not on credit, was not sustained by the proof. This leaves the case, as it was submitted by the judge to the jury, in the charge, "that the implied undertaking of the defendant was, to sell the cattle, in the usual and customary manner."

The defendant claimed, that there was a well known usage and custom in the city of New York, where this sale was to be made and was made, for drovers to sell, on short credit, and to receive notes, in their own names, for the price, and that he had conformed to this custom, in the sale of the defendant's cattle.

In the absence of clear stipulations in contracts, usage of trade or business is often proved, to show the actual intent and purpose of the parties, though not expressed. Such usage must be lawful and reasonable, and so certain and general, in the place where the business is to be done, or the contract performed, or among those engaged in such business, that the parties to the contract may reasonably be supposed to know it, and to act in reference to it. In such

case, it may be taken, that the usage entered into, and became part of, the contract.

A general usage, affecting any branch of business, furnishes good evidence of what is regarded as right and reasonable, in that respect, and when it is conformed to, negligence or misconduct can not be imputed. *Barber* v. *Brace*, 3 Conn. R., 9. *Casco Manufacturing Co.* v. *Dixon et al.*, 3 Cushing, 408. Chitty Con., 20. 1 Sw. Dig., 10.

Proof of the general usage, claimed by the defendant to exist in the city of New York, where the plaintiff intended the sale of his cattle should be made, furnished strong evidence, that he not only assented, but empowered his agent, the defendant, to sell on the usual credit, and in the usual manner. And, although commission merchants, in the absence of instructions or custom, must generally sell for cash, yet, if there be an usage modifying the course of business, in this particular, or in other respects, and the sale is made in the usual and customary way, the agency is legally performed. Story on Agency, § 60, 77, 96, 110, 189, 209, 199, 226. 2 Kent Com., 622. The usage here offered to be proved, and which was proved, was not to contradict or control the terms of a contract definitely expressed, as it would have been, if positive instructions to sell for cash down, had been proved ; but only to show the extent of the duty and obligation of the defendant, in a matter not thus expressed, but inferable from the nature of the business in which the defendant had long been engaged, and the well known manner in which such business had been usually conducted. Usage can not control or vary the clear and unequivocal stipulations of a contract, but will be controlled by them. *Taylor* v. *Briggs*, 2 C. & P., 525. *Smith* v. *Wilson*, 3 B. & A., 728. *Blackett* v. *Royal Exchange Ins. Co.*, 2 C. & J. 244. *Yates.* v. *Pym*, 6 Taun., 446. *Glendale Man. Co.* v. *Protection Ins. Co.*, 21 Conn. R., 19. 1 Greenl. Ev., § 292. The usage proved in this case not only extended to a credit

sale, but to the manner of sale, which the defendant followed, in taking the note for the price of the plaintiff's cattle and his own, in his own name.

But, if no custom regarding this had existed, we could not say, as it was asked of the judge at the trial, to say, that the circumstance of taking the note, payable to himself, would subject the defendant to this loss. The plaintiff was not injured by this,—the purchasers failed, before the time of credit expired, and it was therefore, immaterial, whether a note had been taken or not, or who retained the possession of it. Nothing is more common, than for factors to buy, sell and sue in their own names. If the isolated fact, that one takes a note in his own name, furnishes *prima facie* evidence, that a sale was made on his own account; yet, when explained, as it may be, and shows a mere agency,—only a mode of doing the business for the principal, the responsibilities are not thereby varied. *Corlies* v. *Cumming*, 6 Cowen, 181. And yet, if a sale be made, and a credit given, without authority, and a note taken for the price, payable to the agent personally, he has been holden liable for the amount. *Hemenway* v. *Hemenway*, 5 Pick., 389. And so, if, after the time of credit has expired, the agent shall then give further time, by a note payable to himself. 2 Kent Com., 622. *Hosmer* v. *Bebee*, 14 Martin, 368.

In this opinion, the other judges concurred, except WAITE, J., who tried the cause in the court below, and was disqualified.

New trial not to be granted.