WALKER *v.* THE TRANSPORTATION COMPANY.

1. The first section of the act of Congress of March 3, 1851, entitled "An act to limit the liability of ship-owners and for other purposes," ex empts the owners of vessels in cases of loss by fire from liability for the negligence of their officers or agents, in which the owners have not directly participated.
2. The proviso to that act allowing parties to make their own contracts in regard to the liabilities of the owners, refers to express contracts.
3. A local custom that ship-owners shall be liable in such cases for the negligence of their agents, is not a good custom; being directly opposed to the statute.

"AN act to *limit the liability* of ship-*owners* and for other purposes," passed by Congress March 3, 1851,\* enacts by its *first* section that no *owner or owners*, of any ship or vessel, shall be liable to answer for any loss or damage which may happen by reason or means of *fire* on board said ship or vessel, " unless such fire is caused by the *design or neglect of such owner or owners.*"   The same section contains a *proviso* that " nothing in the act shall prevent the *parties* from making such *contract as they please, extending* or limiting the liability of such *owner.*"   And the *sixth* section enacts that " nothing in the preceding sections shall be construed to take away or affect the remedy to which any party may be entitled against the *master, officers,* or *mariners* of such vessel for negligence, fraud, or other malversation."   Another, that the act shall not apply to the owners of vessels engaged in " *inland* navigation."

With this act in force, Walker & Co. shipped, at Chicago, a cargo of grain on a vessel belonging to the Western Transportation Company, common carriers upon our *northern lakes,* to be delivered at Buffalo.   The vessel caught fire, and the grain was burnt up.   Walker & Co. accordingly filed a libel *in personam* against the company in the District Court for Northern Illinois for the value of the wheat.

The company, admitting the receipt of the wheat on board the vessel and the failure to deliver, set up three defences:

---

\* 9 Stat. at Large, 635.

1. That the wheat was destroyed by fire, which was not caused by the "design or neglect" of the defendant. This article of the defence being obviously framed so as to profit by the act of 1851.

2. That the wheat was received on board, with reference to the terms of the bills of lading usually given by the respondent, which contained an exception of the dangers of navigation, fire, and collision.

3. That the wheat was received on board with the understanding that the usual bill of lading, common in that trade, should be given and accepted as the contract between the parties; and the article averred that such bill of lading contained a clause exempting the ship-owner from liability for loss by "perils of navigation, perils of the sea, and other equivalent words;" and that by usage and custom, those words included loss by fire, unless the fire had been caused by the negligence or misconduct of the owner or his servants or agents. It then averred that the fire did not occur through the negligence or misconduct of the respondent, or its servants or agents.

All three of the defences were excepted to in the District Court in 1856; and the case being submitted there without argument, the libel, without any rulings having been made on the exceptions, was dismissed.

In 1860 this court, in *Moore and others* v. *The American Transportation Co.*,\* decided that, notwithstanding "inland navigation" was excepted in it, the act of 1851 applied to vessels navigating our northern lakes. The libellants, *then* perceiving the advantage to be gained in the face of the act by the admission impliedly made on the other side that the cargo had been shipped and received with an understanding that if fire occurred through the negligence of the owner's *servants or agents* the owner should be liable, *amended* their libel, admitting in form that such was the understanding and contract on both sides; meaning, now, of course, to place their case—as they did afterwards—on the fact that

---

\* 24 Howard, 1

the fire *had* been caused by the negligence or misconduct of the owner's *servants or agents.*

The case was then heard in the Circuit Court, on new testimony taken by both sides as to such negligence and misconduct.   No proof however was given in either court as to the alleged understanding, custom, or contract; and this rested on the allegation of the answer and the admission of the amended answer made in the way already stated.

The Circuit Court affirmed the decree of the District Court, dismissing the libel, and the case being now here on appeal, two questions were considered:

1. Whether the owner of a vessel used in the trade on the lakes is liable, independently of contract, for a loss by fire, which occurs without any design or neglect of the owner; although it may be traced to negligence of some of the officers or agents having charge of the vessel?

2. Whether the special contract set up by the respondent, although admitted by the libellants, was founded on a custom which the law would support, and whether or not, therefore, the case was to be governed by the act of 1851?

*Mr. Rae, for the appellants; Mr. Spalding, contra.*

Mr. Justice MILLER delivered the opinion of the court.

1. The answer to the first of the two questions above presented, and which we have to consider, depends upon the construction to be given to the act of Congress.   That the owners of vessels were liable at common law in the case stated in the question, had been decided by this court in the case of the *New Jersey Steam Navigation Co.* v. *The Merchants' Bank.** That decision led to the enactment of the statute. The statute has been the subject of consideration in this court before, in the case of *Moore and others* v. *The American Transportation Co.*   The policy of the act, its relation to the act of 53 George III, and other British statutes, are there discussed; and it is decided—that being the principal question before the court—that the act embraces vessels engaged

---

* 6 Howard, 344.

in commerce on the great northern lakes as well as on the ocean. It is quite evident that the statute intended to modify the ship-owner's common-law liability for everything but the act of God and the king's enemies. We think that it goes so far as to relieve the ship-owner from liability for loss by fire, to which he has not contributed either by his own design or neglect.

By the language of the first section the owners are released from liability for loss by fire in all cases not coming within the exception there made. The exception is of cases where the fire can be charged to the owners' design, or the owners' neglect.

When we consider that the object of the act is to limit the liability of *owners* of vessels, and that the exception is not in terms of negligence generally, but only of negligence of the owners, it would be a strong construction of the act, in derogation of its general purpose, to hold that this exception extends to the officers and crews of the vessels as representing the owners.

If, however, there could be any doubt upon the construction of this section standing alone, it is removed by a consideration of the sixth section, which, in terms, saves the remedy to which any party may be entitled against the master, officers, or mariners of such vessel, for negligence, fraud, or other malversation. This implies that it was the purpose of the preceding sections to release the owner from some liability for conduct of the master and other agents of the owner, for which these parties were themselves liable, and were to remain so; and that is stated to be their negligence and fraud.

We are, therefore, of opinion that in reference to fires occurring on that class of vessels to which the statute applies, the owner is not liable for the misconduct of the officers and mariners of the vessel in which he does not participate personally.

2. But there is a proviso to the first section of the act, which says, " that nothing in this act contained shall prevent the parties from making such contract as they please, ex-

tending or limiting the liability of such owner." It is asserted by the libellants that the answer of the defendant sets out a contract which makes the owners liable in case of loss by fire from the negligence of their officers and agents; and that, by the amendment to the libel, this contract is admitted; and that the only question left in the case is the existence of such negligence; a question on which testimony was taken on both sides.

The respondent undoubtedly does set out, in one article of his answer, that the wheat was received on board with the understanding that the usual bill of lading, common in that trade, should be given and accepted as the contract between the parties, and avers that such bill of lading contained a clause exempting the ship-owner from liability for loss by "perils of navigation, perils of the sea, and other equivalent words;" and that by usage and custom, those words included loss by fire, unless said fire had been caused by the negligence or misconduct of the owner or his servants or agents.

This article was excepted to, as well as the other two defences we have mentioned, by libellants in the District Court, when the case was tried there; but no ruling seems to have been had on the exceptions. When the case came to the Circuit Court, after the case of *Moore* v. *The Transportation Co.* had decided that the act of 1851 was applicable to the lake trade, the libellants, perceiving the advantage to be gained by such a special contract, amended their libel and admitted it.

No proof was offered of the contract or of the custom; and it may be doubted if the defendant intended to state, as an affirmative proposition, that on such bills of lading as those described, usage held the owners responsible for the negligence of their officers in cases of fire. But the custom is so stated, and the libellants admit the contract and the construction given to it by custom.

It is obvious, however, that there is nothing in the *language* of such bills of lading concerning "perils of navigation and perils of the sea," which makes the owner liable for the negligence of his servants in case of loss by fire. Can usage add

to words which do not express it a liability from which the act of Congress declares the ship-owner to be free? It was the common law, or immemorial usage, which made him liable before the statute. That relieved him from the force of that usage or law. It cannot be that the liability can be revived by merely attaching such usage to words in a contract which have no such meaning of themselves. The contract mentioned in the proviso, which can take a case out of the statute, is one made by the parties, not by custom; in other words, an express contract.

We do not believe, then, that the special contract set up by respondent, founded on usage, although admitted by the libellants, is founded on a custom which the law will support, and therefore the case must be governed by the act of 1851.

The construction which we have already given to that act requires that the judgment of the Circuit Court, dismissing the libel, shall be

AFFIRMED WITH COSTS.