Baird v. Daly.

---

JOHN BAIRD, Appellant, v. CORNELIUS DALY, Respondent.

(GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1871.)

Where the owner of cattle contracted for their transportation with the owner of a scow, upon which they were loaded, and the latter, without privity of the former, employed a steam-tug to tow the scow to its destination,—*Held*, that the shipper could not hold the owner of the tug liable for loss of the cattle happening through negligence of those in charge of the tug.

It seems that by the act of congress of March 3d, 1851 (9 U. S. Statutes at Large, 635, 636), the common-law remedy for damages against the owner of a vessel not used in river or in inland navigation, happening without his privity or knowledge, is converted into a proceeding *in rem*, and that in such cases the jurisdiction of the federal courts is exclusive under section 9 of the judiciary act of congress of 1789.

It seems that vessels navigating the St. Lawrence river are not within the meaning of the act used " in rivers or inland navigation."

Baird v. Daly.

THE complaint in this action alleged that the plaintiff was, on the 19th day of April, 1870, the owner of certain cattle and horses, then at Brockville, in Canada; that he there contracted with one Cavenaugh, the owner of a scow, to transport such property to Morristown, in the United States; that the animals were placed on board of the scow for transportation; that Cavenaugh employed the tug "Sarah Daly" to tow the scow, on which the cattle were then loaded, across the St. Lawrence river from Brockville to Morristown; that the defendant was the owner of the tug; that the tug, while in the performance of the services, and while upon the passage, was conducted so carelessly, negligently and willfully, that the scow swamped and the cattle were lost.

The answer admitted the ownership of the tug, and averred that the defendant's agent in charge of the tug did, at the time stated, undertake to tow the scow from Brockville, in Canada, to Morristown, in the State of New York; that the contract for the services was with Cavenaugh; that some of the cattle were lost, but without fault of defendant, his agents or servants.

The answer denied the jurisdiction of this court to entertain or try the alleged cause of action, and denied each and every allegation of the complaint not directly admitted.

The cause came on for trial at circuit, before the court and jury, and the plaintiff showed that he was, at the time and place alleged, the owner of certain cattle and horses; that he contracted with Cavenaugh, the owner of a scow, to transport cattle and horses to Morristown, in the State of New York; that the property was loaded on to the scow; that the defendant was the owner of the steam-tug "Sarah Daly," then lying at Brockille in charge of a master, the defendant not being present; that Cavenaugh contracted with the master to tow the scow and load, with the tug, from Brockville to Morristown; that the master entered upon the performance of the contract; that after passing two-thirds of the distance on the way, and over the most difficult and dangerous part of the route, the bow of the scow was run under and

swamped, and several of the cattle were lost; that after passing the most dangerous part of the route, the speed of the tug was increased, so that, at the time the scow swamped, the tug was running from five to six miles per hour.

At the close of the plaintiff's evidence, the defendant moved for a nonsuit, which was granted, to which the plaintiff duly excepted.

This appeal is from the judgment entered on the nonsuit.

*Vary & Stone*, for the appellant.

*D. Magone, Jr.*, and *E. C. James*, for the respondent.

Present—MILLER, P. J., JAMES and PARKER, JJ.

JAMES, J.   The loss claimed for in this action, resulted from the swamping of the scow on which the cattle were placed; the scow, it is claimed, was caused to run under by reason of being towed with too great speed. To no other cause could the accident be attributed. Neither the casting off the tow line, or the delay in again attaching it, in any degree caused or contributed to the loss.

In performing the contract the tug was not acting as a common carrier, nor subject to a carrier's responsibilities. (*Allen v. Sackrider*, 37 N. Y., 341.) No act was done by the defendant personally. If liable at all, it is for the acts of the master of the tug as his agent or servant. A principal is liable for the misfeasance, malfeasance or tortious acts of his agent, committed in the course of his agency. (Story on Agency, § 452.)   So that as to contract liability the defendant stands precisely as if he had been in charge of the tug himself.

The complaint counts upon a contract between defendant and a third person, and claims damages for its negligent performance but avers no privity in the plaintiff, or that defendant owed him any duty or obligation.   The fact that plaintiff had property on board the vessel to be towed, did not connect him with the contract; the plaintiff could have removed his property therefrom, and yet defendant would not thereby have been released from the contract.

Baird v. Daly.

This case is unlike that class of cases where the defendant owed a duty, or where the act was willful or malicious, or a nuisance; in such cases a party is liable to an action from any one who suffers. In cases where neither of those elements exist, where the negligence arises in the performance of a contract equivalent to a breach, the negligent party is not liable to every one who may suffer, unless there existed as to them privity in the contract.

If this plaintiff can maintain this action, so can every other person who had property lost or injured by the same negligence. If for such a breach of contract as this, the plaintiff can recover, then, if after contract, the defendant had refused to perform, and before another tug could have been procured, the scow had sunk or been driven on the wharf, and the property of others thereon injured, each could maintain an action against the defendant for his loss. Unless the operations and effects of contracts such as this, are confined to the parties who enter into them, the most absurd and outrageous consequences (to which there would seem to be no limit) would ensue. (*Winterbottom* v. *Wright*, 10 M. & W., 109.)

Therefore, for want of privity in the contract being performed when the cattle were lost, the plaintiff had no cause of action against the defendant (*The Mayor, &c.*, v. *Cunliff*, 2 Com., 165.)

The nonsuit was also placed on the ground that this court had not jurisdiction of the action, that the case was exclusively within the jurisdiction of the courts of the United States. This necessarily leads to an inquiry whether the courts of this State have any concurrent jurisdiction over admiralty and maritime causes arising upon the waters which form the boundary between the United States and the Dominion of Canada.

The cause of action set forth in the complaint is one cognizable in admiralty. Whether it be considered as one founded on contract or tort makes no difference. A contract for towage is to be performed on the water, and is a maritime contract. Negligence in towing the property of another across a

navigable stream, by which the property is lost or injured, is a maritime tort. Either cause of action happening on any navigable water of the United States, or bordering thereon, is cognizable in admiralty. (*N. E. M. I. Co.* v. *Dunham*, 11 Wallace, 1; *The Eagle*, 8 id., 75; 23 How. U. S. Rep., 20.)

By section 2 of article 3 of the Constitution of the United States it is enacted that the judicial power of the federal government shall extend "to all cases of admiralty and maritime jurisdiction." It has been suggested that the jurisdiction thus conferred upon the federal courts is exclusive, by reason of the language of the grant itself, which is made to include "all cases." Whether this be true or not it is not material to inquire; for the Supreme Court of the United States has decided that in all cases to which the judicial power of the United States extends, congress may rightfully vest that jurisdiction exclusively in the federal courts. (*The Moses Taylor*, 4 Wallace, 411; *Martin* v. *Hunter*, 1 Wheaton, 337.) By the ninth section of the judiciary act of 1789, congress, in the exercise of this power, has enacted that "the district courts shall have *exclusive* original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all cases, the right to a common-law remedy, *when the common-law is competent to give it.*" (1 U. S. Stat. at Large, 76 and 77.) To come within this exception the case must not only be one in which there is a common law remedy, but one in which the common-law at the time the action is brought *is competent to give a remedy.* If there is no common-law remedy, or if the common-law is incompetent to give its remedy by reason of statutes altering or taking away the same, then the case is not within the saving clause, and the jurisdiction of the District Court is exclusive of every other court, State or national. (*Leon* v. *Galcerau*, 11 Wall., 185; *The Belfast*, 7 Wall, 624.)

This case comes within the saving clause, and this court has jurisdiction of it, unless the act of congress, entitled "An act to limit the liability of ship owners and for other purposes,"

passed March 3d, 1851, 9 U. S. Stat. at Large, 635, 636, is applicable to it.

By the third section of that act, the owner of a vessel is declared not to be liable " for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred " without his " privity or knowledge," beyond his interest in the value of the vessel and the freight pending; and by the fourth section, if such loss be suffered by several owners of property on the same voyage, and the value of the vessel and freight is insufficient to make compensation to each of them, then they are to recover compensation in proportion to their respective losses ; and for that purpose the owner is permitted to surrender his interest in the vessel and freight to a trustee to be appointed by the court, and thereupon all proceedings against the owner are to cease.  This act was passed to take away the common-law liability of the owner.  (*Moore* v. *Trans. Co.*, 24 How. U. S., 1.)  Under it the owner is not responsible for the negligence or misconduct of his agents or servants in which he does not participate personally.  (*Walker* v. *Trans. Co.*, 3 Wall., 150.)  By it the former common-law action for a recovery of damages is converted into a proceeding *in rem* against the vessel and freight.  It is clear, therefore, that in all cases to which this act applies, although there was formerly a common-law remedy, the common-law *is not now competent to give it*, for otherwise the statute would be nugatory.

The seventh section of said act provides that such act " shall not apply to the owner or owners of any canal boat, barge or lighter, or to any vessel, of any description whatsoever, used in rivers or inland navigation."  The defendant's steam-tug does not come within this clause, unless the act is construed to have no application to the river St. Lawrence.  The Supreme Court of the United States, in *Moore* v. *American Transportation Company* (24 How., 1), in giving construction to this act, held that the vessels mentioned in the seventh section thereof are those engaged in navigating rivers and inland waters, as contradistinguished from those engaged in foreign commerce and commerce between the States; and decided

Baird *v*. Daly.

that the owner of a vessel navigating Lake Erie was entitled to the benefits of the act. The same distinction applies, with equal force, to the navigation of the St. Lawrence river. It divides the United States from a foreign country; is subject to the power of congress to regulate its commerce; the coasting trade is pursued upon its waters; and vessels navigating the great lakes, of which it is the outlet to the ocean, pass over it in their voyages. Every reason given by Justice NELSON for the application of this act to Lake Erie is equally forcible in respect to this great highway of commerce, in which the navigation of the lakes is prolonged.

In this case the defendant's steam-tug was towing a scow from Canada to the United States, when the loss complained of happened. It was shown that the negligence complained of occurred while the agents of defendant were in charge of the tug, and defendant not present; and it is not claimed that what occurred was with his privity or knowledge. The evidence showed that other persons than the plaintiff suffered loss in the disaster. There was no proof of the value of defendant's interest in the vessel and freight; no proof what sum would be sufficient to make compensation to all who suffered loss.

I think the case is within the act of congress of March 3d, 1851, under the construction given to that act by the Supreme Court of the United States. As the remedy given by that act is not a common-law remedy, and as the common-law, in consequence of said act, is now incompetent to give a remedy, the case is not longer within the saving clause of the judiciary act of 1789, and jurisdiction over it is exclusive in the District Court of the United States.

Upon either question the plaintiff was properly nonsuited, and the judgment should be affirmed.

MILLER, P. J., dissented from the positions taken in the second branch of the above opinion.

Judgment affirmed.