JOHN F. RANDALL et al. *vs.* CHARLES SMITH.

*Usage—must not be repugnant to contract or law.*

When a shipper and a carrier of goods have entered into a valid contract, the one to load the other's vessel with a cargo of coal, at a specified port and to pay freight at a certain rate per ton, and the other to carry such cargo to the place of contract for that price, a practice among persons engaged in that kind of business at such place of contract, to treat such contract as binding upon the parties only as might suit the convenience of either of them, cannot be upheld as a commercial usage to affect such written contract because of its repugnancy thereto, and to the principles of law.

In order that a contract may be regarded as having been made with reference to a usage of trade, such usage must be certain, general, known, reasonable and not repugnant to the contract, or the rules of law.

ON EXCEPTIONS by the plaintiffs to instructions of the justice of the superior court.

The facts and rulings are given, sufficiently for an understanding of the case, in the opinion. The verdict was for the defendant.

*B. D. Verrill*, for the plaintiff.

*S. C. Strout & H. W. Gage*, for the defendant.

DICKERSON, J. The evidence in this case shows that the plaintiffs and defendant entered into a contract by which the plaintiffs agreed to furnish a cargo of coal in New York for the defendant's schooner, paying freight at $2.25 per ton, and the defendant to carry the cargo in his vessel to Portland for that price. It further appears in evidence that the plaintiffs were ready to fulfil their part of the contract, but the defendant refused to perform his part. To recover damages for that refusal, this action is brought.

The defendant seeks to exonerate himself from liability for breach of his contract by showing that by usage in Portland the order given by the plaintiffs for loading the defendant's vessel is treated as a permit to the vessel to load with coal if the master finds it

convenient to do so; but if not convenient, the master "throws up the order," and seeks freight elsewhere, no damage being claimed in such case, nor if the shipper refuses to furnish the coal.

Upon request of the defendant's counsel the court instructed the jury that if they should find such usage, they would be justified in finding that the arrangement between the parties was made with reference to it, and should be interpreted in accordance therewith. To this instruction the plaintiffs excepted.

The court further instructed the jury upon this branch of the case, at the plaintiff's' request, that the usage of trade is not admissible to affect the contract if it is contrary to law or unreasonable. The court further instructed the jury that if they should find such a usage proved, and that it was the general or universal usage of the trade, they might infer that the contract was made with reference to it, and the parties may be bound by it, though there should be no direct proof that it was known to them.

The general proposition elicited from the court, in respect to usage, by request of the defendant, is to be considered in connection with the other instructions upon that subject. Taken together the instructions make the usage, if proved, binding upon the parties, if it is consistent with law, reasonable, general or universal, and so ancient as to be known and acted upon by the commercial community, though not known by the parties. The chief office of a usage, when thus applied, is to give a particular effect and meaning to the words of a contract. *Murray* v. *Hatch*, 6 Mass., 465; or to explain the meaning of a new and unusual word. *Eaton* v. *Smith*, 20 Pick., 150; or make clear an ambiguity. *Shaw* v. *Mitchell*, 2 Metc., 65; *George* v. *Joy*, 19 N. H., 544.

But a usage repugnant to the terms and objects of a written contract is not competent to vary or control it; as a usage for a master cooper to send his apprentice abroad on a whaling voyage, and receive his earnings on such voyage. *Randall* v. *Rotch*, 12 Pick., 109; or where, by the terms of a contract to manufacture brick, the bricks when made, were the joint property of the contracting parties, that one of the parties had no interest in them. *Macomber* v. *Par-*

Randall *v.* Smith.

*ker*, 13 Pick, 181; or, in a written contract for the manufacture of retorts, that founders, in the absence of an express agreement, should not be held to warrant their castings against latent defects, or, in case of apparent defects, they were entitled to have the castings returned to them in a reasonable time. *Whitmore* v. *South Boston Iron Company*, 2 Allen, 60; or, when the contract of pledge of stock only provided that it might be transferred after default, that it might be transferred at the pleasure of the holder. *Dyke* v. *Allen*, 7 Hill, 497; or, where, by a policy of insurance, the re-insurer is to make a full indemnity within the amount of risk taken by him, that he is chargeable only for such proportion of the loss, as the amount of re-insurance bears to the original policy. *Mutual Safety Insurance Company* v. *Howe*, 2 Comst., 241; or, for an insurance company in case of a total loss to retain two per cent. per month on the balance of the premium notes from the date of the last assessment, until the expiration of the terms of the policy, when such usage limits and controls the terms of the policy. *Swampscot Company* v. *Partridge*, 5 Foster, N. H., 369; *Foye* v. *Leighton*, 2 Foster, 71; *Leach* v. *Beardslee*, 22 Conn., 404; *McGregor* v. *Insurance Company of Penn.* 1 Wash. Cir. Ct., 39. *Knox* v. *The Nienta*, Crabbe, 534.

So, no usage can be sustained in opposition to the established principles of law, as a usage to return a portion of a premium note, when the insurance is effected on a cargo from a particular port to a foreign port and back, if the vessel fails to get a return cargo. *Homer* v. *Dorr*, 10 Mass., 26; or, that a vessel warranted to be neutral is not neutral but only pretended to be. *Lewis* v. *Thatcher*, 15 Mass., 431; or to shorten the time of presentment, demand and notice in respect to promissory notes within that fixed by law, applicable to such a class of notes. *Mechanics' Bank* v. *Merchants' Bank*, 6 Metc., 13; or, to make the seller of manufactured goods, by sample, liable to the purchaser for damages occasioned by latent defects in the goods sold, not discoverable either in them or the sample, by ordinary care. *Dickerson* v. *Gay*, 7 Allen, 29; or, for the master of a stranded ship to sell the cargo

without necessity. *Bryant* v. *Commonwealth Insurance Company*, 6 Pick., 131; *Walker* v. *Transportation Company*, 3 Wall., 150; *Thompson* v. *Riggs*, 5 Wall., 663; *Dodd et al.* v. *Farlow*, 11 Allen, 430.

So, also, the law refuses to give its sanction to a usage that is absurd or unreasonable, as a usage of ship owners to pay the seamen's advance wages to their own shipping agent employed to procure a crew, and for him, in his turn, to pay the same to the boarding house keeper who brings the seamen to him. *Metcalf* v. *Weld*, 14 Gray, 210; or for merchants of a particular locality, engaged in the whaling trade to accept the bills of their masters drawn for supplies furnished abroad. *Bowen et al.* v. *Stoddard*, 10 Metc., 380.

We think that it is clear from the foregoing authorities, that the usage set up in defence is repugnant to the contract of the parties, and contrary to well established principles of law. It is not resorted to for the purpose of explaining the meaning of any new, unusual, or ambiguous words;—the import of the language used is too apparent to admit of doubt. Nor is its effect simply to modify that contract: if permitted to have effect, it is not by entering into and constituting a part of the contract, and thus limiting its scope and regulating its application. On the contrary it nullifies the contract, and subverts the very objects for which it was entered into, the carrying of the plaintiffs' goods and the beneficial employment of the defendant's vessel. A contract which is absolute in terms, it makes conditional; an obligation expressly enjoined upon both parties it makes optional with either. Under its application the defendant cannot reckon with any confidence upon employment for his vessel, or the plaintiffs upon the receipt of their goods, though they have mutually entered into a valid contract to secure both these objects. Instead of subserving the purposes of the parties, as disclosed in their contract, it dominates over and controls them. In fine, it makes the contract subordinate to the usage, and the legal rights of either party to hinge upon the convenience or caprice of the other. It is difficult to understand

Randall *v.* Smith.

how such a practice could-ever have assumed the proportions necessary to give it the cognomen of a commercial usage in a commercial community; it is less difficult, however, to understand that it could never have the sanction of law.

When a practice, affecting a particular branch of business in a given locality, ripens into a usage of trade, it is evidence of the intention of the parties engaged in such business to make their contracts in reference to it. The competency of such evidence is an exception to the general rule of evidence, since by it a new provision or stipulation is sought to be engrafted upon the written contract of the parties, which cannot be done by evidence of an actual contemporaneous verbal agreement between them. Hence it behooves courts to be exceedingly watchful lest this exception should be extended so far as either to make a new and different contract of an existing written one, by poorer evidence, or entirely to defeat it and render it null and void. The danger thus to be apprehended in such cases was foreseen and stated by Judge Story in the Schooner Reeside, 2 Sumn., 569, in which he says, "I rejoice to find that, of late years, the cases of law both in England and America, have been disposed to narrow the limits of the operations of such usages and customs, and to discountenance any further extension of them." We will add that courts of law, since Judge Story's day, have not been unmindful of their duty in this respect, as the authorities we have cited abundantly show.

By the instructions given to the jury the court left it to them to determine whether or not the alleged usage was contrary to law. That was not a question of fact for the jury but of law for the court. Besides, the court in defining a usage of trade omitted an important element, directly involved in this case, that it must not be repugnant to the written contract of the parties.

*Exceptions sustained.*

APPLETON, C. J., concurred.

WALTON, VIRGIN and PETERS, concurred in the result.