M. E. WOODHOUSE v. ISAIAH CAIN.

*Internal Commerce—Inland Navigation—Liability of Shipowner for Loss of Freight.*

1. The statute of the United States, (Rev. Stats., §4282), does not relieve the owner of a vessel from the consequences of his own negligence, but only from that of his employés and servants.

2. Navigation upon a sound of limited area, lying entirely within a State, is inland navigation, and is not embraced in the provisions of the Act of Congress. Rev. Stats. of the U. S., §§4282, 4289.

3. Navigation on Currituck Sound, in this State, is inland navigation.

CIVIL ACTION, heard on appeal from a Justice of the Peace, before *Gudger, Judge,* at March Term, 1886, of the Superior Court of CURRITUCK county. There was a verdict and judgment for the plaintiff, and the defendant appealed.

The facts are fully stated in the opinion.

*Mr. W. J. Griffin,* for the plaintiff.
*Mr. L. D. Starke,* for the defendant.

SMITH, C. J.   This action, commenced before a Justice of the Peace, and, by successive appeals of the defendant, removed to this Court, is to recover the value of five barrels of flour, shipped on board the steamer "Bonito," then owned and commanded by the defendant, to Poplar Branch, on Currituck Sound, in this State. The goods, as well as the steamer, were burned at the wharf, before she started on her voyage, by fire, which originated in a near warehouse, and was thence communicated to the vessel; and there is no allegation of negligence or want of care in the defendant, to which the damage could be attributed. The defence arises under the Act of Congress, of March 3, 1851, the provisions of which, so far as they apply to the present controversy, are as follows:

8

"No owner of any vessel shall be liable to answer for, or make good to any person, any loss or damage, which may happen to any merchandise, whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to, or on board the vessel, unless such fire is caused by the design or negligence of such owner." Rev. St. U. S., §4282.

"The provisions of this title," relating to the limitation of the liability of the owners of vessels, "shall not apply to the owners of any canal boat, barge or lighter, or to any vessel of any description, whatsoever, used in river or inland navigation." §4289.

It is insisted for the defendant, that the contemplated voyage involved in the contract, was not wholly "inland navigation," within the qualification of the last recited section, inasmuch as the large area of water forming Currituck Sound was to be traversed before reaching the point of destination; and this is assimilated to the great lakes on our northern frontier, and to Long Island Sound, the former of which, in *Moore* v. *The Am. Nav. Co.*, 24 Howard, 1, and the latter in *Prov. & N. Y. Steam. Co.* v. *Hill Man. Co.*, 109 U. S., 578, are declared not to be "inland" waters in the sense of the statute.

The defendant is not only the *owner*, but also the *commander, having personal management of his vessel,* and the statute manifestly looks to an exoneration of one who owns or has an interest in a ship, under the control and direction of officers and agents, and results from the relation of agency, and in giving this relief, aims at encouraging investments in this kind of property. This is the construction put upon the act by the Supreme Court of the United States, in *Walker* v. *Trans. Co.*, 3 Wall., 150, in the opinion in which case Mr. Justice MILLER thus speaks: "The exception is of cases when the fire can be charged to the *owner's design, or the owner's neglect.* When we consider that the object of the act is to limit the liability of owners of vessels, and that the exception is not, in terms, of negligence generally, but only of negligence of the owners, it would be a strange construction

of the act, and in derogation of its general purpose, to hold that the exception extends to the officers and others of the vessels, as representing the owners." He then proceeds to say, that any doubt in the construction of the words used, considered by themselves, which might arise, is removed by another clause, "which was the remedy to which any party may be entitled, against the masters, officers, or mariners of such vessel, for negligence, fraud or other malversation."

Now, while the owner, as such, may be protected from the consequences of the acts and neglects of his employés or servants in charge, he is not released from any liability growing out of his own conduct or want of care, from which damage may result; for their capacities are separate and distinct, and involve independent liabilities.

The case is not varied by the fact that the defendant, in this case, was both owner and captain, for while, if charged with responsibility for the loss, because he owned the steamer, and the negligence was that of his employés, he could have invoked the aid of the statute in relief, it would not avail when the act or neglect which caused the damage was his own, and not that of agents.

But passing this point, we think the case is with the plaintiff, upon its merits, and that the waters to be passed over in the proposed voyage, inclusive of Currituck Sound, are "inland," and that this navigation is not covered by the exemption claimed. In the case first referred to, the great lakes on our Northern frontier were claimed to be inland waters, and the proposition was maintained in a learned and exhaustive argument, fortified by numerous authorities. Delivering the opinion of the Court, Mr. Justice MILLER says of these waters: "They form a boundary between this foreign country and the United States, for a distance of some twelve hundred miles, and are of an average width of one hundred miles, and this without including Lake Michigan, itself 350 miles in length and 90 in breadth, which lies wholly within the United States. The ag-

gregate length of these lakes is over 1,500 miles, and the area covered by their waters is said to be some 90,000 square miles."

Then, after speaking of the immense commerce carried on over these waters, he proceeds :

"This commerce, from its magnitude, and the well-known perils incident to the lake navigation, deserves to be placed on the footing of commerce upon the ocean ; and we think in this view of it, *Congress could not have classed it with business upon rivers or inland navigation, in the sense in which we understand these terms.*" The other decided case, recognizes Long Island Sound, which may be deemed an inward projection of the waters of the ocean, and an arm of it for all practicable purposes, as entitled equally with the lakes, to the exoneration provided in the act.

It is manifest, these rulings fall far short of admitting to the statutory limitation, commerce carried on over the waters of a sound lying wholly in this State, of inconsiderable dimensions and depth, for purposes of navigation as compared with the great lakes, and entirely inland. We cannot undertake to extend the principle so far as to embrace this water, but as the rivers traversed before reaching the sound, and which are admitedly *inland navigation,* so must be the sound itself. Indeed, Mr. Justice CATRON refused to concur in the ruling, that the lakes were not included in the exemption, and held, in a dissenting opinion, that the distinction was between *internal* and *foreign* commerce, and that these waters being in fact *inland,* navigation upon them, however extensive, was left subject to the operation of the existing law.

It must therefore be declared that there is no error, and the judgment is affirmed.

No error. Affirmed.