KOKUSAI KISEN KABUSHIKI KAISHA v. TEXAS GULF SULPHUR CO. *

THE ETNA MARU.

Circuit Court of Appeals, Fifth Circuit.
June 19, 1929.

No. 5347.

*Rehearing denied August 10, 1929.

George C. Sprague, of New York City, and W. E. Cranford, of Galveston, Tex. (Hunt, Hill & Betts, of New York City, Armstrong & Cranford, of Galveston, Tex., and E. F. Rapallo, of New York City, on the brief), for appellant.

T. Catesby Jones and Henry N. Longley, both of New York City, and Henry C. Hughes, of Galveston, Tex. (Bigham, Englar & Jones, of New York City, Lockhart, Hughes & Lockhart, of Galveston, Tex., and Ezra G. Benedict Fox, of New York City, on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. In this case it appears without dispute that appellee chartered the Japanese steamship Etna Maru to carry 8,500 tons of sulphur from Galveston, Tex., to Harburg, Germany. The charter was entered into in New York on behalf of appellant by Suzki & Co., Limited, as agents, and contained the usual warranty that the vessel was tight, staunch, and strong, and in every way fitted for the voyage, and to be maintained in such condition by the owners during the voyage, perils of the sea excepted. There was no other material exception in the charter. In the course of loading the ship it was determined not to put any cargo in the lower No. 3 hold, but to load the 'tween-decks of that hold. The hatch covering the lower hold was put in place, and after about 400 tons of sulphur had been run into this hold, nearly filling it, an explosion of considerable violence occurred, followed by a fire of over an hour's duration, in consequence of which the cargo was damaged by both fire and water.

Appellee filed a libel in rem, and the vessel was seized under admiralty process. Appellant claimed the vessel, and she was released on bond. An answer denying liability was filed, and, alleging the fire had been caused by improper loading, which was being done by appellee, under the terms of the charter, a cross-libel claiming damages to the vessel was filed. There was an interlocutory decree in favor of appellee on the original libel and dismissing the cross-libel. Damages to the cargo were stipulated in the sum of $7,390.80, in which amount a final decree was entered. On this appeal, the cross-libel is abandoned.

With the exception of the master and crew of the vessel, whose testimony was taken by deposition, and is too general to have much probative value, the District Court heard the witnesses and reached the conclusion that the vessel was not seaworthy at the beginning of the voyage, and that this fact could have been ascertained by the exercise of due diligence.

While there is some conflict in the testimony, a clear preponderance supports the conclusions reached by the District Court. As supplementing those found by the District Court, the following facts may be noted:

At the time of the explosion and fire there were perhaps 300 tons of sulphur resting on the hatch cover. The hatch covers were supported by two steel strongbacks fitting into U-shaped clips fastened to the hatch coamings. After the explosion it was discovered that the bottom of the slot of one of these clips, on which the bottom edge of the strongback would ordinarily rest, had been broken out, so that no support of that kind could be afforded the strongback. There was testimony tending to show that this was an old break; that the edges were rounded and more rusty than they would have been, if the break were new and had been caused by the explosion. Flanges were riveted to the upper edge of the strongbacks, which would rest on the top of the clip. These flanges were sufficient to support the weight of the hatch covering, but entirely inadequate to support the load that the hatch was expected to carry in the manner the sulphur was loaded. It is reasonable to conclude that the hatch cover broke down because of this defective clip. There was also testimony tending to show that, when the hatch cover failed, the friction caused by the end of the strongback rubbing against the slot would cause a spark, which would ignite the sulphur dust always present when that chemical is being loaded.

Prior to commencing loading, the ship was inspected, and certificates of inspection and seaworthiness given; but it is evident the inspection was of the most cursory character, so far as hatch No. 3 is concerned. The evidence also tends to show that the loading was done in the customary manner, which is usually safe enough, considering the highly inflammable nature of the cargo.

On the whole we agree with the finding of the District Court that the vessel was unseaworthy at the beginning of the voyage, and that this condition could have been discovered by reasonable inspection in the exercise of due diligence.

■ Appellant relies on the provisions of section 4282 of the Revised Statutes (46 USCA § 182), known as the fire statute, which exempts a shipowner from liability for fire occurring on shipboard, unless caused by his design or neglect. The District Court held against this contention, on the ground that it is the nondelegable duty of the owner to furnish a seaworthy vessel, and that failure to do so amounts to negligence, taking the case out of the statute, and further that, because of the expressed warranty of seaworthiness in the charter, appellant was not entitled to rely upon the limitation of liability statutes in any event. Appellant concedes, apparently, that, if the charter had been entered into personally, the warranty of seaworthiness would have barred the relief of the limited liability laws, but further contends that, as the charter was executed through an agent, it has not that effect. We do not wish to intimate that we disagree with the conclusions reached by the District Court, but it is unnecessary to enter into an extended discussion of the very interesting questions presented.

In this case it is not sought to hold the owner personally liable and no attempt has been made to surrender the vessel in limitation of liability. Obviously it would be useless to do so, as her value must be many times the amount of the judgment rendered. However, it seems to be the theory of appellant that, because of the provisions of the fire statute, if the owner is free from personal negligence, the ship is also exonerated in any event.

Prior to 1851, under the common law, the liability of the shipowner for damages to freight caused by a fire on board ship was that of an insurer, and absolute, unless the fire was caused by an act of God or the public enemy, his personal liability was limited only by the amount of the loss and his ability to respond. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465; The Main v. Williams, 152 U. S. 122, 14 S. Ct. 486, 38 L. Ed. 381.

The statute relied on was part of the Act of March 3, 1851, carried into the Revised Statutes as sections 4282, 4283 et seq. (46 USCA §§ 182, 183 et seq.). These sections are designed to modify the common-law liability of a shipowner, not only as to losses caused by fire, but also by collision and other accidents. They are in pari materia and must be construed together. They were not intended to, and do not, entirely excuse an owner for loss by fire in every event, even though not caused by his own design or negligence. This is tersely and clearly stated by Mr. Justice Bradley in New York Cent. R. Co. v. Lockwood, 17 Wall. 357–361 (21 L. Ed. 627), where he said, referring to the act of 1851, and discussing limitation of carrier's liability generally: "Though intended for the relief of the ship-owner, it still leaves him liable to the extent of his ship and freight for the negligence and misconduct of his employés and liable without limit for his own negligence." See, also, Walker v. Transp. Co., 3 Wall. 150, 18 L. Ed. 172; Norwich Co. v. Wright, 13 Wall. 104, 20 L. Ed. 585; Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U. S. 578, 3 S. Ct. 379, 617, 27 L. Ed. 1038.

■ The authorities are unanimous that in all contracts of affreightment there is an implied warranty of seaworthiness at the beginning of the voyage. The Caledonia, 157 U. S. 124, 15 S. Ct. 537, 39 L. Ed. 644; The Carib Prince, 170 U. S. 655, 18 S. Ct. 753, 42 L. Ed. 1181; Carver, Carriage of Goods by Sea (6th Ed.) § 17.

■ Appellant argues that unseaworthiness is not a factor to be considered in exemption from liability under the fire statute. The cases mainly relied upon by appellant, to wit, Virginia-Carolina Chemical Co. v. Norfolk & American Ship Co., [1912] 1 K. B. 229, [1913] A. C. 52, and Ingram & Royle, Ltd., v. Services Maritimes du Treport, [1914] 1 K. B. 541, construing a similar English statute, section 502 of the Merchant Shipping Act of 1894, also The Strathdon (D. C.) 89 F. 374, affirmed on appeal (C. C. A.) 101 F. 600, are not persuasive in support of this argument. In each of these cases the owner was sought to be held personally liable, and in each the vessel was found to be seaworthy at the beginning of the voyage. Limitation of liability to the value of the vessel and freight was allowed in each case, but the presumption may be indulged, from the tenor of the opinions, that, had the ship been found to be unseaworthy at the beginning of the voyage, the decision would have been to the contrary. But in any event these authorities are not in point.

The conclusion we reach is that, regardless of whether appellant is bound by the expressed warranty of the charter to the extent that it may not limit its liability at all, or whether it has been guilty of negligence personally, it is certain that the unseaworthiness of the vessel at the beginning of the voyage amounted to negligence of either itself or its employees. There is nothing in

the statute to bar a recovery against the ship. Richardson v. Harmon, 222 U. S. 96, 32 S. Ct. 27, 56 L. Ed. 110; Capitol Transp. Co. v. Cambria Steel Co., 249 U. S. 334, 39 S. Ct. 292, 63 L. Ed. 631; The Malcolm Baxter, Jr., 277 U. S. 323, 48 S. Ct. 516, 72 L. Ed. 901.

The record presents no reversible error. Affirmed.