## THE GALILEO.

### EARLE & STODDART, Inc., et al. v. ELLERMAN'S WILSON LINE, Limited.

### No. 97.

Circuit Court of Appeals, Second Circuit.

Dec. 21, 1931.

Bigham, Englar, Jones & Houston, of New York City (T. Catesby Jones and James W. Ryan, both of New York City, of counsel), for appellants.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Cletus Keating

and James H. Herbert, both of New York City, of counsel), for respondent-appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

Ellerman's Wilson Line, Limited, a British corporation, was the owner and operator of the steamship Galileo, which in August, 1926, set out upon a voyage from New York to Hull, England, carrying the libelants' goods as cargo. Within six hours of her departure, fire was discovered in the coal carried in a temporary bunker in No. 3 'tween deck. The vessel immediately put about and returned to the port of New York, where she subsequently sank, as a result of efforts to extinguish the fire, with a total loss of her cargo. The present suit charges a breach of contract in failing to deliver the cargo at destination and the respondent pleads in defense the so-called fire statute (Rev. St. § 4282 [46 USCA § 182]), to which the bills of lading issued to the cargo owners expressly referred.

The parties agree that the fire was the proximate cause of the loss; and the District Court has found that the fire was caused, not by any neglect of the owner, but by the gross negligence of the ship's chief engineer in putting new coal on top of old coal at a time when the old coal had become so hot in spots as to burn the boots of the trimmers, and after the chief engineer had been warned by the foreman of the coal trimmers of this condition. The new coal was taken on a day or two before the Galileo sailed, so that at the commencement of her voyage there existed within her, as the court expressly found, a condition so dangerous that a bunker fire was inevitable. Therefore, within authoritative definitions of seaworthiness (The Silvia, 171 U. S. 462, 464, 19 S. Ct. 7, 43 L. Ed. 241; The Southwark, 191 U. S. 1, 9, 24 S. Ct. 1, 48 L. Ed. 65) the Galileo was unseaworthy when she sailed, and this was due to her chief engineer's negligence. Under these circumstances, the libelants contend, her owner may not claim exoneration from liability under the fire statute. This contention presents the main issue of this appeal.

Section 4282 is in substance section 1 of the Limited Liability Act of March 3, 1851 (9 Stat. 635 [46 USCA § 182]). It provides that no owner of a vessel shall be liable to make good any loss or damage to cargo caused by fire, "unless such fire is caused by the design or neglect of such owner." The phrase "neglect of such owner" means negligence of the owner personally, or, in the case of a corporate owner, negligence of its managing officers or agents, and it is perfectly clear under the authorities that negligence of the ship's officers in causing a fire is not to be imputed to the owner so as to deprive him of the statutory immunity. Walker v. Transportation Co., 3 Wall. 150, 18 L. Ed. 172; Craig v. Continental Ins. Co., 141 U. S. 638, 646, 12 S. Ct. 97, 35 L. Ed. 886; Keene v. The Whistler, Fed. Cas. No. 7645 (D. C. D. Cal.); The Strathdon, 89 F. 374 (D. C. E. D. N. Y.); The Strathdon (D. C.) 94 F. 206, affirmed 101 F. 600 (C. C. A. 2). So far as we are advised, in all cases where exoneration from liability under the fire statute has been denied, there has been proof that the fire was due to the negligence of the owner himself or of some representatives of the owner other than the ship's officers and crew. Arkell & Douglas v. United States, 13 F.(2d) 555 (C. C. A. 2); Bank Line v. Porter, 25 F.(2d) 843 (C. C. A. 4); Charbonnier v. United States, 45 F.(2d) 166 (D. C. E. D. S. C.) affirmed in 45 F.(2d) 174 (C. C. A. 4); Williams S. S. Co. v. Wilbur, 9 F.(2d) 622 (C. C. A. 9); Hines v. Butler, 278 F. 877 (C. C. A. 4); The Elizabeth Dantzler, 263 F. 596 (D. C. E. D. Va.).

Conceding this to be the law when the ship is seaworthy at the commencement of her voyage, the libelants contend that the rule is different when she sets out in an unseaworthy condition and due diligence has not been used by the ship's officers to make her seaworthy. The libelants ask, in effect, that to the exception expressed in the statute, "unless such fire is caused by the design or neglect of the owner," we add as a further exception "or unless such owner or his agents have failed to use due diligence to make the vessel seaworthy." There is no language in the Limited Liability Act to justify such a judicial amendment. The requirement of due diligence to make the vessel seaworthy is expressly made a condition to claiming the benefits of the Harter Act (27 Stat. 445 [46 USCA §§ 190–195]), and lack of diligence by any agent of the owner may be imputed to the owner. Int. Nav. Co. v. Farr & Bailey Mfg. Co., 181 U. S. 218, 21 S. Ct. 591, 45 L. Ed. 830. But we find nothing in the Limited Liability Act (46 USCA § 181 et seq.) which makes such diligence a condition precedent to the exoneration granted by section 4282. Nor can it be urged that the Harter Act has mod-

ified the former statute, for section 6 of the Harter Act (27 Stat. 446) expressly declares the contrary.

Our statute was taken from an earlier British Act (26 Geo. III c. 86), as was pointed out in Norwich & N. Y. Transp. Co. v. Wright, 80 U. S. (13 Wall.) 104, 117, 20 L. Ed. 585, and the present British statute (57 and 58 Vict. c. 60, § 502, par. (i) is very similar to our own. Hence the construction put upon their statute by the British courts has a peculiar significance, additional to any weight to be accorded to the general desirability of uniformity in British and American law in matters maritime, a consideration noted in Queen Ins. Co. v. Globe & Rutgers Ins. Co., 263 U. S. 487, 493, 44 S. Ct. 175, 68 L. Ed. 402. Under the British law it seems to be well settled that a shipowner does not lose exemption from liability for loss by fire because the ship's officers have failed to exercise due diligence to make the ship seaworthy when her voyage starts. Virginia-Carolina Chemical Co. v. Norfolk & North Am. S. S. Co., [1912] 1 K. B. 229; Ingram & Royle v. Services Maritime, [1914] 1 K. B. 541; Tempus Shipping Co. v. Louis Dreyfus & Co., 40 Lloyd's L. L. 217, 219. The case of Royal Exchange v. Kingsley Nav. Co., Ltd., 1923 A. C. 235, construing the Canadian act, is distinguishable both on the facts and on differences in the statutes. It is more like the Harter Act than the fire statute, and the last sentence of paragraph 7 requires that the loss shall arise, not only without "actual fault or privity" of the owners, but also "without the fault or neglect of their agents, servants or employees."

The libelants argue that, whatever the British law may be, our decision must be rendered in their favor because of The Malcolm Baxter, Jr., 277 U. S. 323, 48 S. Ct. 516, 323, 72 L. Ed. 901. While the fire statute was not involved in that litigation, limitation of liability under section 4283 was, and the libelants seize upon the following language at page 331 of 277 U. S., 48 S. Ct. 516, 517: "Both courts below agreed that the Baxter was unseaworthy on sailing, and that respondent failed to exercise due diligence to ascertain her condition before sailing. This was sufficient ground for denying the petition for exoneration and limitation of liability under the Harter Act (Act Feb. 13, 1893, c. 105, 27 Stat. 445 [46 USCA §§ 190–195]), and acts permitting limitation of liability to the vessel and pending freight (R. S. §§ 4282–4289 [46 USCA §§ 175, 182–188]). * * *"

It will be noticed that the failure to exercise due diligence was referred to as that of the respondent, the vessel owner. Had it been only that of the vessel's master, the benefits of the Harter Act would have been lost, but not the benefits of the Limitation of Liability Act, under the authorities. Section 4283 (46 USCA § 183) permits limitation of liability for loss or damage to cargo caused "without the privity, or knowledge of such owner." The phrase quoted has been construed to refer to some personal fault of the owner or his "higher representatives," and not to exclude limitation merely because of negligence on the part of the ship's officers. See Craig v. Continental Ins. Co., 141 U. S. 638, 12 S. Ct. 97, 35 L. Ed. 886; La Bourgogne, 210 U. S. 95, 28 S. Ct. 664, 52 L. Ed. 973; Lord v. Goodall S. S. Co., Fed. Cas. No. 8506 (C. C. Cal.); The Republic, 61 F. 109 (C. C. A. 2); The 84–H, 296 F. 427 (C. C. A. 2); Arkell & Douglas v. United States, 13 F.(2d) 555, 558 (C. C. A. 2); In re Spencer Kellogg & Sons, 52 F.(2d) 129 (C. C. A. 2). We feel confident that the Supreme Court did not intend by this brief reference to the limitation statute to modify the long-established construction of the phrase "without the privity or knowledge of the owner." Unseaworthiness of a vessel has nothing to do with limitation of liability by the owner unless it exists with the owner's privity or knowledge. Lack of diligence to make the vessel seaworthy is therefore immaterial unless it is within the owner's privity of knowledge. Unless this be borne in mind, the use of the phrase "lack of diligence to make seaworthy," which under the Harter Act is not limited to the owner's personal failure in diligence, may well lead to confusion when applied to the limitation act. In the case of The Malcolm Baxter, Jr., as appears from the decision of the District Court, 55 F.(2d) 312, the vessel's hull had defects which an inspection would have disclosed, but the owner did not provide a suitable person to inspect the vessel, which it had purchased without any warranty of seaworthiness in the bill of sale. Hence the lack of diligence was the owner's, and the loss resulting from unseaworthiness was within the owner's "privity." So understood, the case is quite in line with earlier authorities. In the case at bar, however, the lack of diligence was that of the chief engineer, and the owner was not only not in privity with the engineer's default, but was found by the court to be free from personal neglect. Therefore The Malcolm Baxter, would not be inconsistent with allowing limitation under section 4283, and is even

less inconsistent with allowing exoneration under section 4282. In so far as The Etna Maru, 20 F.(2d) 143 (D. C. S. D. Tex.), affirmed upon another ground in 33 F.(2d) 232 (C. C. A. 5), supports the rule contended for by the libelants, we cannot follow it.

The libelants attempt to attribute to the shipowner personal neglect contributing to the dangerous conditions which resulted in the outbreak of the fire. It is argued that the respondent was chargeable with personal neglect (1) in not notifying Huff, the cargo surveyor, that the coal put in No. 3 'tween-deck was being carried for delivery to another of respondent's ships; (2) in not having a shore superintendent to supervise coaling at New York; (3) in not requiring a more rigid inspection of the bulkhead in No. 3 'tween-deck; (4) in providing a bulkhead not air tight; and (5) in acquiescing in the practice of placing new coal on old. All these charges, except the first, have been satisfactorily dealt with in the opinion below, and we find it unnecessary to add to what is there said. The charge of fault in failing to notify Huff that 850 tons of the coal taken on board at New York were not to be used on the Galileo but were intended for another vessel was apparently not urged below. In our opinion it is without merit. Huff was employed by the New York Board of Underwriters, although his fee for surveying the Galileo's cargo was paid by the respondent. He knew that coal was being carried in No. 3 'tween-deck, but did not consider it his duty to inspect the coal bunkers, and he testified that it would have made no difference to him whether the coal were bunker or cargo. The failure to notify him was immaterial. Indeed, if the respondent was under a duty to have the loading of coal inspected by any one other than the ship's officers, it should have appointed a shore superintendent for that purpose. That contention was adequately disposed of below, and the denial of it is in substance a denial of the charge now made regarding a failure to have an inspection by Huff. The District Court rightly found the owner free from personal fault.

It is urged that the bills of lading issued to Earle & Stoddart, Inc., and to Sanday & Co. were the personal contracts of the respondent to which the limitation acts do not apply. Assuming these contracts to have been personal, they expressly incorporated the exemption accorded by section 4282. The contention that all the bills of lading waived this exemption is also without merit.

Decree affirmed.