## PROVIDENCE & NEW YORK STEAMSHIP COMPANY v. HILL MANUFACTURING COMPANY.

### IN ERROR TO THE SUPREME JUDICIAL COURT OF THE COMMON WEALTH OF MASSACHUSETTS.

Argued April 2d and 3d, 1883.—Decided December 17th, 1883.

*Common Carriers—Conflict of Laws—Federal Courts—Jurisdiction—Limited Liability—Statutes—Vessels.*

1. Proceedings in the district court of the United States under the act of 1851, 9 Stat. 635, to limit the liability of ship owners for loss or damage to goods, supersede all other actions and suits for the same loss or damage in the State or federal courts, upon the matter being properly pleaded therein.

2. The effect of such proceedings in superseding other actions and suits does not depend upon the award of an injunction by the district court, but upon the object and intrinsic character of the proceedings themselves, and the express language of the act of Congress.

3. The power of Congress to pass the act of 1851, and of this court to prescribe the rules adopted in December term, 1871, for regulating proceedings under the act, reaffirmed.

4. Loss and damage by fire on board of a ship are within the relief of the 3d, as well as the 1st, section of the act.

5. Goods transported by steamer from Providence to New York were injured by fire on board the vessel at her dock in the latter place, and suits for damage were commenced against the owners of the steamer in New York and Boston ; thereupon proceedings were instituted by such owners in the district court of the United States for New York, under the act of 1851, to limit their liability : *Held,* that said proceedings, properly pleaded and verified, superseded the actions in other courts, and that it was error to proceed further therein.

Action in the Supreme Judicial Court of Massachusetts by the Hill Manufacturing Company, a corporation established under the laws of Maine, having a place of business in Boston, against the Providence & New York Steamship Company, a corporation established by the laws of Rhode Island, and having no place of business in Massachusetts, but having a debt due it from a Massachusetts corporation which was garnisheed. The suit was brought to recover the value of cotton goods transported from Providence to New York in one of the steamship company's vessels, and destroyed by fire in the vessel at the

dock in New York. The defendants denied liability. Pending proceedings the steamship company applied to the District Court of the United States for the Southern District of New York for the benefits of the limited liability act of 1851, 9 Stat. 635. Under that act the district court took jurisdiction of all claims against the vessel and its owners arising out of the destruction of the property on board, and issued an order restraining their prosecution elsewhere. This order was duly served on the Hill Manufacturing Company, and was pleaded and offered in evidence in this suit; but the court nevertheless proceeded to give judgment against the steamship company. The defendants brought their writ of error to reverse that judgment.

*Mr. Joseph H. Choate* and *Mr. Moorfield Storey* for plaintiffs in error.

*Mr. Josiah G. Abbott* and *Mr. Samuel A. B. Abbott* for defendants in error.

Mr. Justice Bradley delivered the opinion of the court.

The writ of error in this case brings up for consideration a judgment of the Supreme Judicial Court of Massachusetts rendered in an action brought by The Hill Manufacturing Company against the Providence and New York Steamship Company as common carriers, to recover damages for the loss of certain goods delivered by the plaintiffs to the defendants at Providence, Rhode Island, to be transported to the city of New York, which goods, it is alleged, were, by the negligence of the defendants, burned and injured by fire. The loss is stated to have occurred in May, 1868; the action was commenced in September, 1870. The defendants first put in an answer denying the allegations of the declarations; but averring that if the goods were delivered to them for the purpose stated, they were delivered to and received by them to be transported to the city of New York over Long Island Sound (not being river or inland navigation), and were safely transported to New York in their steamship Oceanus, and that the damage, if any, was caused by fire happening to said steamship at her dock in New

York, and said fire was not caused by the neglect or design of the defendants, who were the owners of said steamship, but occurred without their privity or knowledge ; and they pleaded the first and third sections of the act of Congress, approved March 3d, 1851, 9 Stat. 635, entitled "An Act to limit the liability of ship owners, and for other purposes," the first section of which provided as follows, to wit :

"That no owner or owners of any ship or vessel shall be subject or liable to answer for or make good to any one or more person or persons any loss or damage which may happen to any goods or merchandise whatsoever, which shall be shipped, taken in, or put on board any such ship or vessel by reason or by means of any fire happening to or on board the said ship or vessel, unless such fire is caused by the design or neglect of such owner or owners."

And the third section of said act provided as follows, to wit :

"That the liability of the owner or owners of any ship or vessel for any embezzlement, loss, or destruction by the master, officers, mariners, passengers, or any other person or persons, of any property, goods, or merchandise shipped or put on board such ship or vessel, or for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture done, occasioned, or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel and her freight then pending."

The defendants subsequently amended their answer by adding a particular statement of the manner in which the loss occurred, namely, by a fire at New York, which commenced in a building on the wharf or pier at which the steamship lay after her arrival, and was rapidly communicated to the vessel, which was burned to the water's edge, together with most of her cargo, including not only the goods of the plaintiffs, but a large quantity of goods of other persons, greatly exceeding in amount the value of the defendants' interest in the vessel and her freight then pending. The amended answer further stated, that the defendants having been sued in the

present case and in other cases in New York city and elsewhere, for injuries to said cargo by said fire, and desiring as well to contest their liability, and the liability of the steamer, for the loss and damage occasioned by the fire, as also to claim the benefit of the limitation of liability provided for in the third and fourth sections of said act of Congress, on May 14th, 1872, filed in the proper district court of the United States having jurisdiction thereof, to wit, the District Court for the Southern District of New York, pursuant to said act and the rules of the Supreme Court of the United States in that behalf, their libel and petition, setting forth the facts and circumstances on and by reason of which such exemption from and limitation of liability were claimed, and offering to pay into said district court the amount of the defendants' interest in said vessel and freight, or to give a stipulation with sureties for the payment thereof into said court whenever the same should be ordered, praying relief in that behalf, and further praying that said district court would cause due appraisement to be had of the amount or value of the interest of said defendants in said steamer and her freight for said voyage, and would either order the same to be paid into said district court, or a stipulation to be given by the defendants with sureties for the payment thereof into said district court whenever ordered, and that said district court would issue a monition against all persons claiming damages for the loss, destruction, damage, and injury occasioned by said fire on board of said vessel, citing them to appear before said district court and make due proof of their respective claims at a time to be therein named; and also praying that said district court would designate a commissioner, before whom such claims should be presented in pursuance of said monition; and that if, upon the coming in of the report of said commissioner and confirmation thereof, it should appear that said defendants were not liable for such loss, damage, destruction, and injury, it might be so finally decreed by said district court; otherwise, that the moneys paid or secured to be paid into said district court as aforesaid (after payment of the costs and expenses) should and might be divided pro rata amongst the several claimants in proportion to the amount of their re-

spective claims, and praying that in the meantime, and until the final judgment should be rendered, said district court would make an order restraining the further prosecution of all and any suit or suits against said defendants in respect to any such claim or claims; that upon said libel said district court caused due appraisement to be had and made of the amount or value of the interest of said defendants in said steamer and her freight for said voyage, and duly made an order for the giving by the defendants of a stipulation with sureties for payment thereof into court whenever the same should be ordered.

The answer further stated that the defendants, pursuant to the order of said district court, entered into a stipulation, with two sureties, to pay the value of said interest and freight as so appraised into said district court whenever ordered, which stipulation was approved, and said order having been complied with, a monition was thereupon issued by said district court against all persons claiming damages for the loss, destruction, damage, and injury occasioned by said fire on board said steamer, citing them to appear before said district court and make due proof of their respective claims at or before a certain time named in said monition, to wit, at or before the fifteenth day of October, A.D. 1872, which time was at least three months from the issuing of said monition; and designating George F. Betts, Esq., a commissioner of said district court, as the commissioner before whom such claims should be presented, in pursuance of said monition, and ordering public and other notice of said monition as therein set forth, and that said notice had been served on the said Hill Manufacturing Company, as well as on all other claimants, pursuant to said monition; and said district court duly made an order restraining the further prosecution of all and any suit or suits against the defendants in respect of any such claim or claims.

The answer then referred to a certified copy of the libel and the proceedings thereon, annexed to and made part of the answer, and also made profert of said libel and proceedings, and concluded as follows:

"And these defendants further say that said fire, and the injury

Opinion of the Court.

thereby caused or occasioned, was without the privity or knowl-
edge of these defendants. And these defendants further answer-
ing, say that if the plaintiffs have any claim by reason of any
injury to said cotton cloth, it cannot be enforced in this action,
but can only be enforced in said suit in said district court, and
then and there only under and pursuant to said act of Congress.
And these defendants, further answering, say that said steamer
Oceanus was not a canal boat, barge, or lighter, and was not
used in rivers or inland navigation, and that said voyage from
Providence to said city of New York was not in rivers or inland
navigation ; and that an injunction has been issued by said dis-
trict court against said Hill Manufacturing Company, restraining
and enjoining them from the further prosecution of this suit, and
that said injunction has been duly served on said Hill Manufac-
turing Company ; and further, that said Hill Manufacturing Com-
pany sued in this court the Boston & Lowell Railroad Company
for the alleged loss and injury complained of in the declaration in
this cause to the cotton cloth therein mentioned, and recovered
therein a judgment against said Boston & Lowell Railroad Com-
pany for said alleged loss and injury, which judgment was settled,
paid, and satisfied."

Upon the filing of this answer the case was opened to a jury,
but before any verdict was taken the case was reserved, upon
the report of the judge who presided at the trial, for the con-
sideration of the full court. In September term, 1875, it was
ordered by the Supreme Judicial Court that the case do stand
for trial. Whereupon the defendants filed the following objec-
tions, viz. :

"And now, with the view of having this action taken to the
Supreme Court of the United States upon a writ of error, if the
final judgment therein in this honorable court shall be against the
defendants, and for the purpose of saving the rights of the de-
fendants, and so that their going to trial shall not be construed a
waiver of their rights or of the objections herein, said defendants
come and object to and protest against the ruling and decision of
this honorable court ordering and directing said action to stand
for trial, and also the ruling of this honorable court that if the
loss complained of by the plaintiffs was occasioned by the neglect

of defendants it must have been with their privity or knowledge and was not within the act of Congress limiting the liability of ship owners ; also the ruling that the proceedings in the district court of the United States did not affect the jurisdiction of this honorable court."

In April term, 1876, the cause came on for trial, and the defendants, by leave of the court, further amended their answer by setting forth, amongst other things, the final decree of the District Court of the United States for the Southern District of New York, made on the 16th of October, 1872, by which it was adjudged and decreed that the Hill Manufacturing Company (the plaintiffs in the present suit), among other parties, be forever debarred from prosecuting any claims for damages for any loss, damage, or injury occasioned by the fire on board the steamer Oceanus, on the 24th of May, 1868.

Thereupon the trial proceeded, and the evidence showed that the plaintiffs' goods were delivered to the defendants at Providence to be transported to New York, and were thus transported in the steamer Oceanus, upon Long Island Sound, and that the vessel safely arrived at New York with the goods on board, and was moored in a slip or dock on the North River side on a Sunday morning ; and whilst lying there on that day, ready to be discharged, the fire occurred which caused the loss in question, commencing in a building on the wharf or pier which was used by the defendants in their transportation business. The plaintiffs adduced evidence tending to show that this building was not properly constructed and managed to avoid the risk of fire, and that the defendants were guilty of negligence in that behalf ; and they contended that if the jury believed that the defendants were guilty of such negligence, they could not claim the benefit of the act of Congress, but were liable to respond for the loss of the goods. The defendants adduced counter proofs, tending to show that they were not guilty of any negligence; and also put in evidence the record of proceedings upon their libel and petition in the District Court of the United States for the Southern District of New York, corresponding to the statements of their

answer; and it was admitted that process and the restraining order issued in said suit had been duly served upon the plaintiffs. The record of proceedings in said suit is set forth in the transcript, but it is unnecessary to describe them in detail. They appear to be in conformity to the act of 1851, and to the orders made by this court relating to proceedings under said act for securing the benefit of limited liability provided for therein. They were instituted in the proper court, namely, the District Court of the United States for the Southern District of New York, in which district the steamer was found, or so much as remained of her after the fire. The libel and petition set forth the proper facts and made the proper allegations, as well to show that neither the libellants nor the steamer were liable for the injury caused by the fire, as to show that, if there was any liability, the libellants were only liable to the extent of their interest in the vessel and freight; and upon this libel and petition the proper proceedings were had, and the proper monition and process were issued, published and served, to ascertain the amount of the libellants' interest in the steamer and freight, and to bring all parties before the court who had any claims arising from the injury caused by the fire; and the said district court, on the 13th day of May, 1872, made an order restraining the further prosecution of the suits which had been commenced against the libellants in New York, which was duly served upon the respective parties concerned; and after the amount of the libellants' interest in the vessel and freight had been duly appraised on the 8th of July, 1872, a further order was made that a monition issue against all persons claiming damages for the loss and injury occasioned by the fire on board of said steamer, citing them to appear before said district court and make due proof of their respective claims at or before the 15th day of October, 1872; and that the monition be published, and personally served on the attorneys, proctors or solicitors of the plaintiffs or libellants in each of the suits brought and pending in any court in the United States against the libellants, or against said steamer Oceanus, to recover for any such damages. A monition was duly issued in pursuance of this order, and was served

on the attorney of the plaintiffs in this suit on the 30th day of July, 1872. On the 2d day of September, 1872, the district court made a further order against the different plaintiffs and libellants by name who had brought suits for damages, &c., and, amongst others, against the plaintiffs in this case, ordering them to refrain from the further prosecution of their respective suits, or any suit whatever, against the libellant (the defendants in this suit) to recover for any loss of cargo by the aforesaid fire on the steamship Oceanus; and that any further prosecution of such suits be and the same was by said order restrained. A certified copy of this order was served on the plaintiffs' attorney in this suit at Boston on the 7th day of October, 1872, and upon their treasurer at the same place, on the 9th of the same month. On the 16th of October, 1872, default was taken against the plaintiffs in this case, and divers other persons, for failing to appear and present their claims before the district court according to the monition in that behalf, and a decree was made forever debarring them from presenting, filing or prosecuting any claims for damages for any loss or injury occasioned by said fire.

After the evidence was closed, the defendants asked the court to rule that upon the whole evidence in the case the plaintiffs could not maintain their action, and that the jury must find for the defendants; but the court refused so to rule. The defendants then asked the court to instruct the jury, amongst other things, as follows:

"1. That under the proper construction of the act of Congress entitled 'An Act to limit the liability of ship owners, and for other purposes' (U. S. Stat. 1851, ch. 43), the libel and petition of the defendants filed in the District Court of the United States for the Southern District of New York, and the proceedings had thereon, the record of which has been put in evidence, are a bar to the plaintiffs' action.

"2. That under the proper construction of said act of Congress, the plaintiffs are precluded from maintaining their action by said proceedings in said district court.

"3. That by the decree of said district court, made upon said libel and petition, and the subsequent proceedings thereon, it has

been adjudged, as between the parties to the present suit, that the fire which caused the damage, for which the plaintiffs seek to recover, was not caused by the design or neglect of the defendants' within the meaning of said act of Congress."

The court refused to give these instructions; but left it to the jury to find for the plaintiffs if they were satisfied from the evidence that the fire was caused by the negligence of the defendants, either in respect to the construction and equipment of the vessel, or in respect to the construction and management of the pier or buildings thereon.

To all the rulings of the court the defendants excepted; and the jury having found a verdict for the plaintiffs, the exceptions were argued before the supreme judicial court, and were overruled, and judgment was entered for the plaintiffs. To that judgment this writ of error is brought. The case, as decided by the Supreme Judicial Court of Massachusetts, is reported in 113 Mass. 495, and 125 Mass. 292.

The principal question in this case is, whether the institution of proceedings in the District Court of the United States, under the act of 1851, for procuring a decree of limited liability of the owners of the Oceanus (the defendants in the present action), for the losses and injuries to goods on board of the vessel, superseded the prosecution of claims for the same losses and injuries in other courts. It seems to us that this must be the necessary effect of such proceedings, and that this results as well from the language of the law, as from its object and purpose.

The first section of the act exempts ship owners from liability for losses on board of their ship by fire, " unless such fire is caused by the design or neglect of such owner or owners."

The second section relates to the shipping of precious metals and other valuables without giving notice of their character and value, and exempts the master and owners of the vessel, in such case, from liability as carriers.

The third section declares that the liability of ship owners for embezzlement, loss or destruction of goods on board of their ship by the master, crew, passengers or others, or for loss or

damage by collision, or for any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel and her freight then pending.

The fourth section of the law declares, " That if any such embezzlement, loss or destruction shall be suffered by several freighters or owners of goods, wares or merchandise, or any property whatever on the same voyage, and the whole value of the ship or vessel and her freight for the voyage shall not be sufficient to make compensation to each of them, they shall receive compensation from the owner or owners of the ship or vessel in proportion to their respective losses; and for that purpose the said freighters and owners of the property, and the owner or owners of the ship or vessel, or any of them, may take the appropriate proceedings in any court for the purpose of apportioning the sum for which the owner or owners of the ship or vessel may be liable amongst the parties entitled thereto. And it shall be deemed a sufficient compliance with the requirements of this act on the part of such owner or owners, if he or they shall transfer his or their interest in such vessel and freight for the benefit of such claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such trustee for the person or persons who may prove to be legally entitled thereto, from and after which transfer all claims and proceedings against the owner or owners shall cease." 9 Stat. 635, 636.

By the last section of the act it is declared that it shall not apply to the owner or owners of any canal-boat, barge, or lighter, or to any vessel of any description whatever, used in rivers or inland navigation.

In these provisions of the statute we have sketched in outline a scheme of laws and regulations for the benefit of the shipping interest, the value and importance of which to our maritime commerce can hardly be estimated. Nevertheless, the practical value of the law will largely depend on the manner in which it is administered. If the courts having the execution

of it administer it in a spirit of fairness, with the view of giving to ship owners the full benefit of the immunities intended to be secured by it, the encouragement it will afford to commercial operations (as before stated) will be of the last importance: but if it is administered with a tight and grudging hand, construing every clause most unfavorably against the ship owner, and allowing as little as possible to operate in his favor, the law will hardly be worth the trouble of its enactment. Its value and efficiency will also be greatly diminished, if not entirely destroyed, by allowing its administration to be hampered and interfered with by various and conflicting jurisdictions.

As the present case raises a question of great importance to the practical and successful working of the law, the decision of which, indeed, will determine whether it is to be of any real value, it will be proper to examine a little the grounds on which, as well the law itself as the proceedings adopted for carrying it into execution, rest for their support.

We have no doubt that Congress had power to pass the law. It is not only a maritime regulation in its character, but it is clearly within the scope of the power given to Congress "to regulate commerce." In the case of the *Lottawana*, 21 Wall. 558, speaking of the power to make changes in the maritime law of the country, we said :

" Congress undoubtedly has authority under the commercial power, if no other, to introduce such changes as are likely to be needed. The scope of the maritime law and that of commercial regulation are not coterminous, it is true ; but the latter embraces much the largest portion of ground covered by the former. Under it Congress has regulated the registry, enrollment, license, and nationality of ships and vessels ; the method of recording bills of sale and mortgages thereon ; the rights and duties of seamen ; the limitations of the responsibility of ship owners for the negligence and misconduct of their captains and crews ; and many other things of a character truly maritime. . . . On this subject the remarks of Mr. Justice Nelson, in delivering the opinion of the court in *White's Bank* v. *Smith*, 7 Wall. 655 (which established the validity and effect of the act respecting the record-

ing of mortgages on vessels in the custom house) are pertinent. He says, 'Ships or vessels of the United States are creatures of the legislation of Congress. None can be denominated such, or be entitled to the benefits or privileges thereof, except those registered or enrolled according to the act of September 1st, 1789; and those which, after the last day of March, 1793, shall be registered or enrolled in pursuance of the act of 31st December, 1792, and must be wholly owned by a citizen or citizens of the United States, and to be commanded by a citizen of the same. . . . Congress having created, as it were, this species of property and conferred upon it its chief value, under the power given in the Constitution to regulate commerce, we perceive no reason for entertaining any serious doubt but that this power may be extended to the securing and protection of the rights and title of all persons dealing therein.' "

It need not be added that if Congress had power to pass the act of 1851, it is binding on all courts and jurisdictions throughout the United States.

We have said that, by the provisions of the act, the scheme was sketched in outline. A reference to its provisions shows that it was only in outline; and that the regulation of details as to the form and modes of proceeding was left to be prescribed by judicial authority. The law was evidently drawn in view of similar laws adopted and in operation in England and in some of the States. It laid down a few general principles and propositions, and left it to the courts to enforce them and carry them into practical effect.

Although the act was passed in 1851, it stood on the statute book for twenty years before a careful scrutiny of its provisions was demanded of this court. In the case of *The Norwich Transportation Company* v. *Wright,* decided in December term, 1871, and reported in 13 Wallace, 104, we were called upon to interpret the act, and to adopt some general rules for the better carrying of it into effect. On that occasion, a history of similar acts, both in England and this country, an examination of the general maritime law on the same subject, and the circumstances under which the act of 1851 was passed, were reviewed, and the general effect and construction of the

act were examined and discussed. The consideration given to the whole subject in the opinion delivered in that case, and in subsequent opinions of this court when the matter has been brought up for examination, notably in the cases of *The Benefactor*, 103 U. S. 239, and *The North Star*, 106 U. S. 17, supersedes the necessity of any minute examination of the law at this time. We will make one extract from the opinion in the case first referred to. It is there said:

" The proper course of proceeding for obtaining the benefit of the act would seem to be this : When a libel for damages is filed, either against the ship *in rem* or the owners *in personam*, the latter (whether with or without an answer to the merits) should file a proper petition for an apportionment of the damages according to the statute, and should pay into court (if the vessel or its proceeds is not already there), or give due stipulation for, such sum as the court may, by proper inquiry, find to be the amount of the limited liability, or else surrender the ship and freight by assigning them to a trustee in the manner pointed out in the fourth section. Having done this, the ship owner will be entitled to a monition against all persons to appear and intervene *pro interesse suo*, and to an order restraining the prosecution of other suits. If an action should be brought in a State court, the ship owners should file a libel in admiralty, with a like surrender or deposit of the fund, and either plead the fact in bar in the State court, or procure an order from the district court to restrain the further prosecution of the suit. The court having jurisdiction of the case, under and by virtue of the act of Congress, would have the right to enforce its jurisdiction and to ascertain and determine the rights of the parties. For aiding parties in this behalf, and facilitating proceedings in the district courts, we have prepared some rules which will be announced at an early day."

These rules were announced at a subsequent day of the same term, and will be found at the commencement of 13 Wallace, pages xii. xiii.

The substance of these rules, so far as relates to the purpose in hand, was as follows: that ship owners desiring to claim the benefit of limitation of liability provided for in the third and fourth sections of the act, may file a libel or petition in

the proper district court of the United States, setting forth the facts and circumstances on which such limitation of liability is claimed, and praying relief in that behalf; and thereupon the court, having caused due appraisement to be had of the amount or value of the interest of said owners respectively in the ship or vessel, and her freight for the voyage, shall make an order for the payment of the same into court, or for the giving of a stipulation with sureties for payment thereof into court whenever the same shall be ordered; or, if the owners shall so elect, the court shall, without such appraisement, make an order for the transfer by them of their interest in such vessel and freight, to a trustee to be appointed by the court under the fourth section of the act, and upon compliance with such order, the court shall issue a monition against all persons claiming damages for loss or injury to goods (respecting which the limited liability is sought), citing them to appear before the court and make due proof of their respective claims, at or before a certain time not less than three months from issuing the same; and public notice of the monition shall be given as in other cases, and such further notice served through the post office, or otherwise, as the court in its discretion may direct; and the court shall also, on the application of the owner or owners, make an order to restrain the further prosecution of all and any suit or suits against said owners in respect of any such claims.

Provision is then made for proof of all claims before a commissioner to be appointed by the court, for a report thereon, and for a *pro rata* distribution of the money paid into court, or the proceeds of the ship and freight, amongst the several claimants.

The rules further provide that the ship owners, making suitable allegations for the purpose, shall be at liberty to contest their liability, or the liability of the vessel, to pay any damages, as well as to show that if liable they are entitled to a limitation of liability under the act; and that any parties claiming damages may contest the right of the ship owners to exemption from liability, or to the benefit of a limited liability.

Finally, the rules provide that the libel or petition shall be

filed and the said proceedings had in any district court of the United States in which the ship or vessel may be libelled to answer for any such loss or damage; or, if the vessel be not libelled, then in the district court of any district in which the owners may be sued; and if the ship have already been libelled and sold, the proceeds shall represent it.

The court had no doubt then, and has no doubt now, of its power to make these rules under the acts of Congress which authorized it to prescribe the forms of proceeding in equity and admiralty causes. The Process Acts of 1792 and 1828 had declared that the forms of writs and other process, and the forms and modes of proceeding in suits in equity and in those of admiralty and maritime jurisdiction, should be according to the principles, rules and usages which belong to courts of equity and admiralty respectively, as contradistinguished from courts of common law, except as modified by the Judiciary Act of 1789; but subject to such alterations and additions as the respective courts should in their discretion deem expedient, or to such regulations as the Supreme Court of the United States should think proper from time to time by rule to prescribe to any circuit or district court concerning the same. 1 Stat. 276; 4 Stat. 278. And the Process Act of 1842 gave the supreme court full power and authority to prescribe and regulate the forms of process in the district and circuit courts, and the forms and modes of framing and filing libels, bills, answers and other proceedings and pleadings, in suits at law, in admiralty or in equity in said courts, and the forms and modes of taking evidence, and generally the forms and modes of proceeding to obtain relief, and of drawing up and enrolling decrees, and of proceeding before trustees appointed by the court, and generally to regulate the whole practice of said courts. 5 Stat. 518.

We are clearly of opinion that the authority thus vested in this court was adequate and sufficient to enable it to make the rules before referred to. The subject is one pre-eminently of admiralty jurisdiction. The rule of limited liability prescribed by the act of 1851 is nothing more than the old maritime rule administered in courts of admiralty in all countries except England, from time immemorial; and if this were not so, the sub-

ject-matter itself is one that belongs to the department of maritime law. The adoption of forms and modes of proceeding requisite and proper for giving due effect to the maritime rule thus adopted by Congress, and for securing to ship owners its benefits, was therefore strictly within the powers conferred upon this court; and where the general regulations adopted by this court do not cover the entire ground, it is undoubtedly within the power of the district and circuit courts, as courts of admiralty, to supplement them by additional rules of their own.

We have deemed it proper to examine thus fully the foundation on which the rules adopted in December term, 1871, were based, because, if those rules are valid and binding (as we deem them to be), it is hardly possible to read them in connection with the act of 1851 without perceiving that after proceedings have been commenced in the proper district court in pursuance thereof, the prosecution *pari passu* of distinct suits in different courts, or even in the same court by separate claimants, against the ship owners, is, and must necessarily be, utterly repugnant to such proceedings, and subversive of their object and purpose.

In promulgating the rules referred to, this court expressed its deliberate judgment as to the proper mode of proceeding on the part of shipowners for the purpose of having their rights under the act declared and settled by the definitive decree of a competent court, which should be binding on all parties interested, and protect the ship owners from being harassed by litigation in other tribunals. Unless some proceeding of this kind were adopted which should bring all the parties interested into one litigation, and all the claimants into concourse for a *pro rata* distribution of the common fund, it is manifest that in most cases the benefits of the act could never be realized. Cases might occur, it is true, in which the shipowners could avail themselves of those benefits, by way of defence alone, as where both ship and freight are totally lost, so that the owners are relieved from all liability whatever. But even in that case, in the absence of a remedy by which they could obtain a decree of exemption as to all claimants, they

would be liable to a diversity of suits, brought perhaps in different States, after long periods of time, when the witnesses have been dispersed, and issuing ·in contrary results before different tribunals ; whilst in the ordinary cases, where a limited liability to, some extent exists, but to an amount less than the aggregate claims for damages, so as to require a concourse of claimants and a *pro rata* distribution, the prosecution of separate suits, if allowed to · proceed, would result in a subversion of the· whole object and scheme of the statute. The questions to be settled by the statutory proceedings being, first, whether the ship or its owners are liable at all (if that point is contested and has not been decided), and secondly, if liable, whether the owners are .entitled to a limitation of liability, must necessarily be decided by the district court having jurisdiction of the case ; and, to render its decision conclusive, it must have entire control of the subject to the exclusion of other courts and jurisdictions. ·If another court may investigate the same questions at the same time, it may come to a conclusion contrary to that of the. district court ; and if it does (as happened in this case), the proceedings in the district court will be thwarted and rendered ineffective to secure to the ship owners the benefit of the statute.

This case is very different from that of two concurrent actions for a debt or other demand proceeding at the same time in different courts ; though even that, in the English law, was matter for plea in abatement in the action last instituted. Still, as both actions in such case are prosecuted for the same end—the satisfaction of the debt—and as only one satisfaction can be had, no essential conflict arises between the two. But the very object of proceedings for limited liability is to inquire and determine whether the parties ought to be sued at all in any other tribunal after giving up, or submitting to pay the value of, all their interest in the ship and freight. Besides, it is obvious on the face of the thing, that proceedings. for limited liability cannot be participated in by two jurisdictions, without interference and conflict between them, and cannot have any useful effect ·if a different court may inquire into and decide the same question, and execute a separate judgment independent of, and

perhaps contrary to, that of the court to which the inquiry properly belongs. Such a state of things would utterly defeat the purpose of the law. The judgment in one court would annul or render nugatory that of the other.

The inconveniences that may arise from preventing or arresting the prosecution of separate suits by the claimants are no greater in this case than in the case where proceedings at law are arrested for the purpose of having an investigation in a court of equity, or where distinct and separate suits are restrained for the purpose of settling a common controversy in a single proceeding, as in the case of bills for preventing a multiplicity of suits, and in cases of bankruptcy. By the Bankrupt Act of 1867 it was enacted that no creditor whose debt was provable under the act should be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge should have been determined; although, if the amount due the creditor was in dispute, the suit, by leave of the court in bankruptcy, might proceed to judgment for the purpose of ascertaining the amount, but execution should be stayed. See *Hill* v. *Harding*, 107 U. S. 631. None of the cases here referred to more imperatively require a cessation of proceedings in other suits for the same cause than that of the proceeding for a limitation of liability under the statute in question.

Nor is the inconvenience any greater than that which occurs when a case is removed from the State to a federal court. In that case, on the presentation of a petition for removal, duly verified and showing the proper grounds for removal, and accompanied with the bond required by the statute on that subject, the law declares "it shall then be the duty of the State court to accept said petition and bond, and proceed no further in such suit." In the case before us, as well as in the cases of bankruptcy and of removal, the parties have a right to have their causes heard and determined by a court of the United States invested with appropriate jurisdiction, and capable of affording a proper mode of relief.

In England, where the forms and modes of proceeding in the courts of admiralty are (or formerly were) greatly hampered and

restricted, ship owners seeking a decree of limited liability under the law of that country, were forced to resort to the court of chancery for redress, and to call before that court the various parties interested. Here they were subjected to some onerous conditions before the court would exercise jurisdiction in their behalf, one of which was, that they must confess liability for the damages which they sought to have limited in accordance with the act of Parliament. But when this was done, and the amount of the confessed liability was paid into court, they were entitled to an injunction against all other suits and proceedings wherever instituted or pending; and the cause then proceeded, in due course, by reference to a master to take the proof of claims and make a report of the facts, and by a final decree of distribution.

Under recent English statutes, the High Court of Admiralty, as well as the court of chancery, is empowered to administer the law, when it has possession of the ship or its proceeds. In the 11th edition of Abbott on Shipping, published in 1867, it is stated as follows:

"In cases where several claims are made or apportioned against an owner for loss of life, personal injury, or loss or damage to ships, boats, or goods, the court of chancery, and the High Court of Admiralty, whenever any ship or proceeds thereof are under its arrest, in England and Ireland, and the Court of Session in Scotland, and any competent court in a British possession, are empowered to entertain proceedings at the suit of such owner for the purpose of determining the amount of his liability, and for the distribution ratably of such amount, and to stop all actions and suits pending in any other court in relation to the same subject-matter.*

It is believed that in all other countries except England, the courts of admiralty, or tribunals of commerce having cognizance of maritime causes, exclusively exercise this jurisdiction; and no other courts can really exercise it so conveniently and satisfactorily as those courts can. And the general course of pro-

---

* Referring to 24 Vict., c. 10, s. 13. For the previous practice see *The Saracen,* 2 W. Rob. 451; *S. C.* on appeal, 11 Jurist, 255; 6 Moore P. C. 56; *The Clara,* Swabey, 6.

ceeding, in whatever courts it is exercised, shows the necessity, everywhere acknowledged, that the court exercising the jurisdiction in any case should have exclusive control of the case.

In view of these considerations, and having no doubt of the jurisdiction of the district courts over the matter, as courts of admiralty, in the rules adopted in December term, 1871, the District Court of the district in which the vessel is libelled or found, or in which the owners are sued, was designated as the proper court in which to institute the proceedings for obtaining a decree of limited liability. When cases arise in which the vessel and freight have been totally lost, and no District Court has, or can have, possession of any fund to distribute, resort may probably be had with propriety to the District Court of the district in which the owners reside, or where the vessel perished. It will be time enough, however, to consider what is proper in such exceptional cases when they arise. In *Ex parte Slayton*, 105 U. S. 451, we held that jurisdiction accrued to the District Court of the district comprising the port to which the vessel was bound, although she had been sunk in the lake and only a few fragments were washed ashore, the proceeds of which, however, amounting to a trifling sum, were deposited in court. On this branch of the subject the following remarks were made in the opinion pronounced in the case of *Norwich Transportation Company* v. *Wright*, already cited:

" The act does not state what court shall be resorted to, nor what proceedings shall be taken ; but that the parties, or any of them, may take ' *the appropriate proceedings in any court*, for the purpose of apportioning the sum for which,' &c. Now, no court is better adapted than a court of admiralty to administer precisely such relief. It happens every day that the proceeds of a vessel, or other fund, are brought into that court to be distributed amongst those whom it may concern. Claimants are called in by monition to present and substantiate their respective claims ; and the fund is divided and distributed according to the respective liens and rights of all the parties. Congress might have invested the Circuit Courts of the United States with jurisdiction of such cases by bill in equity, but it did not. It is also evident that the State courts have not the requisite jurisdiction. Unless, therefore,

the District Courts themselves can administer the law, we are reduced to the dilemma of inferring that the legislature has framed a law which is incapable of execution. This is never to be done if it can be avoided. We have no doubt that the District Courts, as courts of admiralty and maritime jurisdiction, have jurisdiction of the matter; and this court undoubtedly has the power to make all needful rules and regulations for facilitating the course of proceeding." 13 Wall. at 123.

We see no reason to modify these views, and, in our judgment, the proper District Court, designated by the rules, or otherwise indicated by circumstances, has full jurisdiction and plenary power, as a court of admiralty, to entertain and carry on all proper proceedings for the due execution of the law, in all its parts; and its decrees, in cases subject to its jurisdiction, are valid and binding in all courts and places. In the present case, the proper court undoubtedly was the District Court of the United States for the Southern District of New York, where the remains of the vessel were situated, and where suits were brought against the owners. Proceedings under the act having been duly instituted in this court, it acquired full jurisdiction of the subject-matter; and having taken such jurisdiction, and procured control of the vessel and freight (or their value), constituting the fund to be distributed, and issued its monition to all parties to appear and present their claims, it became the duty of all courts before which any of such claims were prosecuted, upon being properly certified of the proceedings, to suspend further action upon said claims.

But the power of the District Courts to issue an injunction to stay proceedings in a State court is questioned, since, by the Judiciary Act of 1793, 1 Stat. 335, it was declared that no writ of injunction shall be granted [by the United States courts] "to stay proceedings in any court of a State." But the act of 1851 was a subsequent statute, and by the 4th section of this act—after providing for proceedings to be had under it for the benefit of ship owners, and after declaring that it shall be deemed a sufficient compliance with its requirements on their part if they shall transfer their interest in ship and freight for

the benefit of the claimants to a trustee to be appointed by the court—it is expressly declared, that "from and after [such] transfer all claims and proceedings against the owners shall cease." Surely this injunction applies as well to "claims and proceedings" in State courts as to those in the federal courts; and whilst the District Court having jurisdiction of the case, for the purpose of enforcing the act of Congress and the rules adopted by this court in pursuance thereof, can only direct an injunction against the parties and not against the courts in which such "claims and proceedings" are prosecuted; yet, any further proceedings on the part of said courts, after being judicially informed by plea or suggestion duly made in the cause, of the action and proceedings in the District Court, would be against the express words of the act, and clearly erroneous. The operation of the act, in this behalf, cannot be regarded as confined to cases of actual "transfer" (which is merely allowed as a sufficient compliance with the law), but must be regarded, when we consider its reason and equity and the whole scope of its provisions, as extending to cases in which what is required and done is tantamount to such transfer; as where the value of the owners' interest is paid into court, or secured by stipulation and placed under its control, for the benefit of the parties interested.

This view of the statutory injunction, and of its effect upon separate actions and proceedings, renders it unnecessary to determine the question as to the legality of the writ of injunction issued by the District Court. Although we have little doubt of its legality, the question can only be properly raised on an application for an attachment for disobeying it. As the writ was issued prior to the adoption of the Revised Statutes, the power to issue it was not affected by any supposed change of the law introduced into the revision, by the 720th section of which the prohibition of the act of 1793 in regard to injunctions against proceedings in State courts has this exception appended to it: "except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy." Under the rule of "*expressio unius*," this express exception may be urged as having the effect of excluding any other exception; though

it is observable that the injunction clause in the act of 1851 is preserved without change in section 4285 of the Revised Statutes, and will probably be construed as having its original effect, due to its chronological relation to the act of 1793.

But, as before indicated, the legality of the writ of injunction is not involved in this case. In our opinion the State court, in overruling the plea of the defendants, which set up the proceedings pending in the District Court, and in ordering the cause to stand for trial; and again, on the trial, in overruling as a defence the proceedings and decree of the District Court as set up in the amended answer, disregarded the due effect, as well as the express provisions, of the act of 1851, and therein committed error. It was the duty of the court, as well when the proceedings pending in the District Court were pleaded and verified by profert of the record, as when the decree of said court was pleaded and proved, to have obeyed the injunction of the act of Congress, which declared that " all claims and proceedings shall cease." When the plea only showed that proceedings for limited liability were pending and undetermined in the District Court, probably a stay of proceedings was all that the defendants could require; but when they set up and produced the final decree of that court, forever debarring the plaintiffs from prosecuting any claim for damages, they were entitled either to a verdict and judgment in their favor, or to a dismissal of the proceedings.

We have assumed in the foregoing discussion that the case of loss and damage by fire on board of a ship is within the provisions of the third and fourth sections of the act of 1851. This, however, is disputed, and it is necessary to examine the question. The language of the third section (which governs also the fourth) is certainly broad enough to embrace cases of loss by fire. It declares that the liability of the owner or owners of any ship or vessel "for any act, matter or thing, loss, damage, or forfeiture, occasioned or incurred without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel and her freight then pending." Why should liability for loss by fire be excepted

from the relief here prescribed? It is just as much within the
reason of the law as any other liability; and it is within its
terms. If it is excepted, it must be by virtue of some implica-
tion arising from other parts of the law. Such an implication
is sought in the first section, which declares that no owner or
owners of a ship or vessel shall be liable to answer for any loss
or damage which may happen to any goods on board of such
ship or vessel by reason or means of any fire happening to or
on board of said ship or vessel, "unless such fire is caused by
the design or neglect of such owner or owners." It is con-
tended that this section covers the whole ground so far as
liability for losses by fire is concerned, and therefore such lia-
bility must be impliedly excepted from the relief provided by
section three. But we fail to see why this should necessarily
follow. Fire, except when produced by lightning, not being
regarded in the commercial law as the act of God, ship owners,
as common carriers, were held liable for any loss or damage
caused thereby. The first section of the act of 1851 was no
doubt intended to change this rule. It was copied (all except
the last clause) from the second section of 26 George III., ch.
86, passed in 1786. The last clause of the section, excepting
from its operation cases in which the fire is caused "by the
design or neglect" of the owners, was probably implied in the
English statute without being expressed, as in ours. In all
cases of loss by fire, not falling within the exception, the ex-
emption from liability is total. But there is no inconsistency
or repugnancy in allowing a partial exemption in cases falling
within the third section; that is, cases of loss by fire happening
without the *privity or knowledge* of the owners. They may
not be able, under the first section, to show that it happened
without any neglect on their part, or what a jury may hold to
be neglect; whilst they may be very confident of showing,
under the third section, that it happened without their privity
or knowledge. The conditions of proof, in order to avoid a
total or a partial liability under the respective sections, are very
different.

It is true the owners of a ship may desire to contest all lia-
bility whatever, as well as to establish a limited liability

if they fail in the first defence; and this they may do, as well in cases of loss by fire as in other cases, in one and the same proceeding. And we see no repugnancy between the two defences. One is a more perfect defence than the other, and requires a different class or degree of proofs. That is all. In our judgment the case of loss or damage by fire is comprised within the terms and relief of the third and fourth sections of the act.

*The judgment of the Supreme Judicial Court of Massachusetts is reversed and the cause remanded, with directions to take such further proceedings as may be in accordance with this opinion.*

Mr. Justice Field, with whom Mr. Justice Gray concurred, dissenting.

I am not able to agree with the court in its disposition of this case. As I construe the act of 1851 to limit the liability of ship owners, the liability of the steamship company for the loss by fire of the goods of the plaintiff below, the Hill Manufacturing Company, rests upon the first section. In my judgment that section is not qualified, nor in any respect affected by the rest of the act; nor is an action to recover for losses by fire, caused by the design or neglect of the owner of the vessel, controlled by proceedings taken by him to limit his liability for losses from other causes. The opinion of the court proceeds on the assumption that cases of loss and damage by fire are within the provisions of the third section of the act; it so states expressly. Yet this assumption necessarily involves the conclusion that a fire, caused by the design or neglect of the owner, may occur without his privity or knowledge, which appears to me to be nothing less than saying that contradictory and inconsistent terms may be appropriately applied to the same transaction.

The object of the act was to change the rule of the common law as to the liability of the owners of vessels for losses and injuries, to which they did not contribute, either designedly or by their neglect, but which were attributable entirely to the acts or omissions of their officers or employes. The common law

placed a burdensome responsibility upon the owners for the acts or omissions of their agents or servants without their knowledge or assent; and to lighten this responsibility the statute in question was passed. It was not its purpose to limit the responsibility of the owners for the consequences of their own wrongful acts of omissions.

The first section exempts them from all liability for loss or damage by fire of goods shipped on board their vessels, unless such fire is caused by their design or neglect. When the fire is thus caused, the common-law rule of liability remains as before; and that extends to the whole value of the property if entirely lost, or to the extent to which it may be damaged, if only partially destroyed. The concluding provision of the section is equivalent to a declaration that the exemption provided in the preceding part shall not exist when the fire originated from the wrongful acts or omissions of the owners.

The third section prescribes a limited liability to the owners for losses from a great variety of acts. It does not exempt them from all liability, but restricts it in the cases mentioned to the value of their interest in the vessels and the freight then pending. It is as follows:

"That the liability of the owner or owners of any ship or vessel for any embezzlement, loss, or destruction by the master, officers, mariners, passengers, or any other person or persons, of any property, goods, or merchandise shipped or put on board such ship or vessel, or for any loss, damage, or injury by collision, or for any act, matter or thing, loss, damage, or forfeiture done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall in no case exceed the amount or value of the interest of such owner or owners respectively in such ship or vessel and her freight then pending."

The fourth section refers to the acts mentioned in the third, and declares that if any such embezzlement, loss, or destruction shall be suffered by several freighters or owners of goods on the same voyage, and the whole value of the ship and freight shall not be sufficient to make compensation to each of them, they shall receive compensation from the owner in proportion

to their respective losses; and for that purpose the freighters and owners of the property and the owner of the ship, or any of them, may take proceedings in any court for the purpose of apportioning the sum for which he may be liable among the parties thereto; and the owner may transfer his interest in the ship and freight, for the benefit of the claimants, to a trustee, to be appointed by any court of competent jurisdiction, to act as such for the persons entitled thereto, after which transfer all claims and proceedings against him shall cease.

It seems clear that the various cases of damages and losses enumerated in section three are not intended to embrace losses by fire. This section first speaks of the liability of the owner for embezzlement, loss, or destruction, by the master, officers, mariners, passengers, or other persons, of property shipped on board the vessel. It then speaks of his liability for any loss damage, or injury by collision; and, lastly, for any loss by any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred without his privity or knowledge. It is conceded that the language of the first and second parts of the section does not include losses by fire, and the language of the concluding clause does not necessarily include them. It may be applied to other cases; and as losses by fire are specifically embraced by the first section, it must receive such application as will give to each section full force. This is a settled rule of construction. Besides, it cannot be contended that an act done by the design of the owner could have been done without his privity or knowledge. It must necessarily have been done with both; and if the fire was caused by the neglect of the owner it must be presumed to have been caused with his knowledge. Where one is bound to do a thing or to see that certain things are done, he is presumed to know the direct consequence of his carelessness and neglect in those respects. Especially is this so where his doing the thing, or seeing that it is done, is necessary to the safety of life or property. He cannot shield himself from responsibility by saying that he did not know what would be the consequence of his carelessness and neglect. The law presumes that he does know it and intends it. The act speaks of neglect by the owner, not by any sub-

ordinate officer or agent. It is therefore personal neglect which is meant, and it would be unreasonable to hold that the owner was ignorant of that which necessarily followed from his own personal conduct.

Not only would this be unreasonable, but there is an inconsistency in holding that the first section exempts the owner from all liability in cases of fire happening without his design or neglect, if by the third section a liability is fastened upon him to the extent of the value of the ship and freight in case of a fire occurring without his privity or knowledge. And yet, according to the position of the court, the owner is exempted by the first section from all liability if a fire occur without his knowledge and privity, and by the third section is subjected to liability to the extent of the value of the ship.

As stated by counsel of the plaintiff below, there can be no public policy in absolving common carriers by water from their full liability to others for property which has been entrusted to their care, and has been lost by their design or neglect. It certainly would require language, as he observes, so clear and plain that no subtlety of criticism can escape from the conclusion, before such a purpose can be ascribed to Congress. It would be establishing a limitation of liability against public policy, common right, and the universal feeling of justice. It would make the law one to protect wrongdoers, and to punish the innocent who had been injured by them while thus protected.

If, then, the first section is not affected by the other sections of the act, the liability of the owner of a vessel in case of fire caused by his design or neglect exists, as it always has existed at the common law; and that liability may be enforced in any court, State or federal, having jurisdiction of the parties. The other provisions by which the owner may seek to relieve himself from liability by surrendering his vessel and the freight earned have no application to such a case. It follows that the defence of a liability limited, as asserted by the District Court, goes to the ground.

There is also another consideration which leads to the same conclusion. By § 9 of the Judiciary Act of 1789, re-enacted in § 563, clause 8, of the Revised Statutes, a common-law remedy

is expressly reserved to suitors in all cases where the admiralty has jurisdiction, provided the common law also gives a remedy; and that the common law gives a remedy in cases of losses by fire where goods are entrusted to common carriers by water, there can be no doubt. Of such common-law remedy, the State courts have exclusive jurisdiction when the parties are citizens of the same State, and concurrent jurisdiction with the federal courts when the parties are citizens of different States. The State court, therefore, had jurisdiction of this case. It is a suit *in personam*, and even if a federal court might also take jurisdiction, that of the State court, having first attached, could not be subsequently defeated. *Wallace* v. *McConnell*, 13 Pet. 136; *Taylor* v. *Carryl*, 20 How. 583; *Mallett* v. *Dexter*, 1 Curtis, 178. The federal court could not issue any injunction against the parties which would affect the jurisdiction of the State court. The act of Congress of 1793 forbids any injunction from a federal court to restrain the prosecution of a suit in a State court; and this act has never been repealed, either expressly or by implication, except as to proceedings in bankruptcy. Rev. St. § 720; *Peck* v. *Jenness*, 7 How. 625; *Taylor* v. *Carryl*, 20 How. 583; *McKim* v. *Voorhies*, 7 Cranch, 279; *Diggs* v. *Walcott*, 7 Cranch, 179; *Watson* v. *Jones*, 13 Wall. 679; *Haines* v. *Carpenter*, 91 U. S. 254; *Dial* v. *Reynolds*, 96 U. S. 340.

For these reasons, I am of opinion that the judgment of the State court should be affirmed, and I am authorized to say that Mr. Justice Gray concurs with me in this conclusion.