42

In re ORIENTAL REPUBLIC OF URU-
GUAY (Commando General De La Ar-
mada and Servicio De Bugues Auxil-
iares) as Owner and Operator of the
M/V PRESIDENTE RIVERA for exon-
eration from or limitation of liability.

Civ. A. No. 90–404–SLR.

United States District Court,
D. Delaware.

Oct. 13, 1992.

Francis J. Murphy, and Randall E. Rob-
bins of Ashby & Geddes, Wilmington, Del.,

for plaintiffs Oriental Republic Uruguay, Presidente Rivera, Servicio de Buques Auxiliares de La Armada and Captain Raul DiBarrart.

Jeanne L. Langdon, and Keith A. Trostle of Delaware Dept. of Justice, Wilmington, Del., for claimant State of Del.

Michael B. McCauley of Palmer, Biezup & Henderson, Wilmington, Del., and Kevin G. O'Donovan of Palmer, Biezup & Henderson, Philadelphia, Pa., for claimant Delaware Terminal Co.

Peter E. Hess, Wilmington, Del., for claimants I Did the Delaware, Old Seventh Street Boat Yard, Inc., Up the Creek Restaurant and Bar, Inc., and Phillips Holding Co., Ltd.

Jeffrey Weiner of Law Offices of Jeffrey Weiner, Wilmington, Del., and Gerald J. Williams, Mark R. Cuker and Alan H. Casper of Williams & Cuker, Philadelphia, Pa., for claimants Penns Grove New Jersey Residents.

Paul M. Lukoff of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., and Edward C. Radzik and James P. Krauzlis of Donovan, Parry, Walsh & Repetto, New York City, for claimant Petroleo Brasileiro S.A.

Wanda Chin Monahan of the Dept. of Law and Public Safety, Div. of Law, and Martin J. McHugh of Hazardous Waste Litigation Section, Div. of Law, Trenton, N.J., for claimant State of N.J.

James S. Green of Duane, Morris & Heckscher, Wilmington, Del., and Francis J. Deasey of Deasey, Mahoney & Bender, Ltd., Philadelphia, Pa., for claimant Sun Refining and Marketing Co.

Patricia C. Hannigan of U.S. Atty.'s Office, Wilmington, Del., Michael McIntyre of Environment & Natural Resources Div., EES, and Peter F. Frost of the Torts Branch, Civil Div., Washington, D.C., for claimant U.S.

## MEMORANDUM OPINION

SUE L. ROBINSON, District Judge.

### I. Introduction

On June 24, 1989, the M/V PRESIDENTE RIVERA, an oil tanker owned and operated by the government of the Oriental Republic of Uruguay ("limitation plaintiff"), ran aground in the Delaware River. The tanker's hull ruptured and the vessel subsequently discharged over 183,000 gallons of fuel oil into the water.[1] At the time of the accident, the tanker was manned by a complement of Uruguayan nationals on active duty in the Uruguayan Navy and by a licensed Delaware River pilot who the ship had taken on at the entrance to Delaware Bay.

Record evidence shows that the oil spill resulted from a series of mishaps that began when the "ship's port anchor was prematurely let go in the Delaware River...." (D.I. 103 at A–18) The vessel eventually went aground during a maneuver made "in attempt to turn the vessel back upriver after picking up the port anchor." (D.I. at A–19) It is undisputed that the oil spill caused by the grounding of the PRESIDENTE RIVERA resulted in extensive damage to the shores and waters of the United States, Delaware, New Jersey and Pennsylvania requiring massive clean-up efforts. In addition, a substantial amount of private property damage apparently resulted from the spill.

As a result of this oil spill, numerous parties commenced legal action against the Oriental Republic of Uruguay as owner and operator of the PRESIDENTE RIVERA. Uruguay responded to these lawsuits by instituting the instant proceeding which seeks exoneration from or limitation of liability pursuant to the Limitation of Liability Act, 46 U.S.C.App. § 183(a). Various governmental entities, specifically the United States of America and the states of Delaware, New Jersey and Pennsylvania[2],

---

1. It is admitted by limitation plaintiff that "approximately 183,184 gallons of oil were spilled." (D.I. 113 at 3) However, record evidence indicates that over 300,000 gallons of oil may have been released by the PRESIDENTE RIVERA.

The precise amount of oil released by the tanker is a factual issue which is unnecessary to resolve at this time.

2. Four agencies of the Commonwealth of Pennsylvania and limitation plaintiff have settled

filed claims against the PRESIDENTE RIVERA in this limitation proceeding. Additionally, a number of private parties filed claims against the limitation plaintiff. Presently before the court is a motion for partial summary judgment on the issue of liability filed by the State of New Jersey.

*II. New Jersey's Motion for Partial Summary Judgment*

Claimant, the State of New Jersey, moves for partial summary judgment on the issue of limitation plaintiff's liability to the State under various New Jersey environmental statutes.

A. The New Jersey Spill Compensation and Control Act

■ New Jersey's first claim against limitation plaintiff is for damages and civil penalties pursuant to the New Jersey Spill Compensation and Control Act ("the Spill Act"), N.J.STAT.ANN. § 58:10–23.11 to 58:10–23.24 (West 1992). New Jersey also seeks damages and civil penalties under the New Jersey Water Pollution Control Act, *Id.* §§ 58:10A–1 to 58:10A–60. Additional-

ly, New Jersey seeks compensatory damages and civil penalties from limitation plaintiff pursuant to section 23:5–28 of the New Jersey Statutes.

The Spill Act prohibits the discharge [3] of oil and other "hazardous substances" into the waters or onto the lands of the State of New Jersey. *Id.* § 58:10–23.11c [4]. The Spill Act imposes liability, regardless of fault, upon any party in violation of the Act's non-discharge provisions for cleanup/removal costs [5] and for civil penalties.[6] A party in violation of the Spill Act can escape liability only under very limited circumstances which do not appear to be present in the instant case.[7]

Limitation plaintiff does not dispute that the PRESIDENTE RIVERA discharged a large quantity of oil into the waters and onto the lands of the State of New Jersey, nor does limitation plaintiff allege that any of the defenses to liability specified in the Spill Act are applicable here. Therefore, limitation plaintiff is liable to New Jersey under the Spill Act for cleanup and removal costs, and for statutory penalties, all of

Pennsylvania's claim against plaintiff. A Stipulation of Settlement was entered into the court record. (D.I. 84).

3. The Spill Act defines the term "discharge" as "[a]ny intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or onto the lands of the State, or into waters outside the jurisdiction of the State, when damage may result to the lands, waters or natural resources within the jurisdiction of the State." *Id.* § 58:10–23.11b(h).

4. The Spill Act provides the following as to hazardous substance discharges: "The discharge of hazardous substances is prohibited. This section shall not apply to discharges of hazardous substances pursuant to and in compliance with the conditions of a Federal or State permit." *Id.* § 58:10–23.11c. The term "hazardous substances" is defined under the Spill Act, in part, as "such elements and compounds, including petroleum products, which are defined as such by the [New Jersey Department of Environmental Protection]...." *Id.* § 58:10–23.11b(k). Claimant, New Jersey, has indicated to the Court that the No. 6 fuel oil spilled from the PRESIDENTE RIVERA is covered by the Spill

Act and limitation plaintiff has not disputed this contention.

5. The Spill Act provides that "[a]ny person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred.." *Id.* § 58:10–23.11g(c)(1).

6. The Spill Act's civil penalty provision applicable at the time of this incident provides as follows: "any person ... who otherwise violates any of the provisions of this act ... shall be liable to a penalty of not more than $50,000 for each offense ... If the violation is of a continuing nature, each day during which it continues shall constitute an additional, separate and distinct offense." *Id.* § 58:10–23.11u(a) (West 1989).

7. The Spill Act provides that "[a]n act or omission caused solely by war, sabotage, or God, or a combination thereof, shall be the only defenses which may be raised by any owner or operator of a major facility or vessel responsible for a discharge in any action arising under the provisions of this act." *Id.* § 58:10–23.11g(d). Limitation plaintiff does not contend in its motion

which must be proven during the damages stage of this limitation proceeding [8].

### B. Section 23:5–28 of the New Jersey Statutes

■ Section 23:5–28 of the New Jersey Statutes prohibits the discharge of oil into the waters of New Jersey [9] and imposes a statutory penalty [10] on anyone in violation of this provision. This statute "has been construed as imposing liability without fault." *Lansco, Inc. v. State, Dept. of Environmental Protection*, 138 N.J.Super. 275, 285, 350 A.2d 520, 525 (Ch.Div.1975), *aff'd*, 145 N.J.Super. 433, 368 A.2d 363 (1976). Limitation plaintiff's motion papers indicate that plaintiff does not dispute its liability under this statute, although again there is some disagreement between the parties as to the appropriate number of penalty days. Therefore, the Court finds that limitation plaintiff is liable under § 23:5–28. Calculation of the appropriate amount of statutory penalties under this statute will be addressed in subsequent proceedings in this action.

### C. The New Jersey Water Pollution Control Act

■ New Jersey further claims that limitation plaintiff is liable for statutory penalties under New Jersey's Water Pollution Control Act, N.J.STAT.ANN. § 58:10A–1 to 58:10A–60 (1992). This statute makes "[i]t unlawful for any person to discharge [11] any pollutant [12] except in conformity with a valid New Jersey Pollutant Discharge Elimination System permit...." *Id.* § 58:10A–6(a). It is undisputed that limitation plaintiff does not hold a valid permit to discharge oil into the Delaware River.

Limitation plaintiff contends that it is not liable under this statute because, according to plaintiff, the legislative policy and statutory language of the Water pollution Control Act demonstrate that this statute "was enacted to establish a permit system to control wastewater discharges that occur with some degree of regularity." (D.I. 106 at 16) Limitation plaintiff's position is that the Spill Act, and *not* the Water Pollution Control Act, is designed to regulate situations such as this case "involv[ing] the loss of oil cargo as a result of a vessel accident." (D.I. 106 at 16) Although plaintiff's position has some merit in that it seems somewhat anomalous to require an oil tanker to obtain a discharge permit before accidentally or negligently releasing oil into the water, limitation plaintiff failed to cite any persuasive authority supporting this argument, and it appears that the weight of authority and the plain language of the statute are against plaintiff's position.

The New Jersey courts have construed the Water Pollution Control Act as a "strict liability" statute which imposes liability without proof of fault, negligence or intent: "the penalty section of the Water Pollution

---

papers that any of these defenses are applicable to New Jersey's claim under the Spill Act.

8. It appears that the Spill Act imposes liability for cleanup/removal costs and for statutory penalties for each day that oil was discharged from the vessel. The Court will not resolve the factual question of how many days oil was discharged from the PRESIDENTE RIVERA at this stage of the proceedings. Questions regarding the proper amount of statutory penalties and appropriate damages for which limitation plaintiff is liable to New Jersey under the Spill Act and other applicable statutes will be addressed during the damages stage of this case.

9. This statute provides, in relevant part, that "[n]o person shall put or place into, turn into, drain into, or place where it can flow, wash, or be emptied into, or where it can find its way into, any of the fresh or tidal waters within the jurisdiction of this State any petroleum products...." N.J.STAT.ANN. § 23:5–28(a).

10. The penalty provision of this statute provides: "A person violating this section shall be liable to a penalty of not more than $6,000 for each offense ... If the violation is of a continuing nature, each day during which it continues shall constitute an additional, separate, and distinct offense." N.J.STAT.ANN. § 23:5–28(c).

11. The term "discharge" is defined, in relevant part, under the Water Pollution Control Act as "an intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying, or dumping of a pollutant into the waters of the State...." *Id.* 58:10A–3e.

12. Under the Water Pollution Control Act, the term "pollutant" is defined, in relevant part, as "any dredged spoil, solid waste, incinerator residue, sewage, garbage, refuse, *oil* ... or other residue discharged into the waters of the State." *Id.* 58:10A–3n (emphasis supplied).

**46**

Control Act, N.J.S.A. 58:10A–10e, states that violators 'shall be subject upon order of a court to a civil penalty not to exceed $10,000 per day of such violation....' Only the doing of the proscribed act need be shown." *State, Dept. of Environmental Protection v. Lewis,* 215 N.J.Super. 564, 573, 522 A.2d 485, 489 (N.J.App.Div. 1987) (citations omitted). Thus, limitation plaintiff is strictly liable [13] for statutory penalties under the Water Pollution Control Act since it is undisputed that limitation plaintiff discharged oil into the waters of New Jersey without a valid permit. Again, calculation of the number of days during which limitation plaintiff violated the Water Pollution Control Act and determination of the appropriate amount of civil penalties for which plaintiff is liable must await further proceedings in this action.

**D. The Anti-Stacking Provision of the New Jersey Spill Act**

■ Limitation plaintiff posits that if penalties are imposed against it under the New Jersey Spill Compensation and Control Act, then New Jersey is precluded from seeking penalties pursuant to any other statutory authority. The relevant provision of the Spill Act provides in pertinent part that "no person who receives compensation for damages or cleanup costs pursuant to any other State or Federal law shall be permitted to receive compensation for the same damages or cleanup costs under this act." N.J.S.A. 58:10–23.11v. The difficulty with limitation plaintiff's position is that New Jersey seeks *compensation for damages and cleanup costs* under only the Spill Act. Although New Jersey seeks *statutory penalties* under other environmental statutes, the anti-stacking provision limits only compensation for damages and cleanup costs and does not address statutory penalties. Limitation plaintiff's argument, therefore, must fail.

**13.** It should be noted that the Water Pollution Control Act contains another provision indicating that liability for statutory penalties is appropriate under the statute in cases where the discharge of a pollutant results from an accidental

**E. Relevance of the Limitation of Liability Act to this Motion**

■ Limitation plaintiff contends that ruling on New Jersey's summary judgment motion at this time will deprive plaintiff of its benefits under the Limitation of Liability Act. It appears that limitation plaintiff misconstrues the purpose and meaning of the Limitation Act. The Limitation Act has two general purposes. First, the Act limits the amount of a vessel owner's liability for damages arising from a maritime collision to the value of the ship and its cargo, assuming the incident occurred without the privity or knowledge of the owner. 46 U.S.C.App. § 183(a). Second, the Limitation Act supersedes all other actions in state or federal court and provides for a single venue for all claims arising from the casualty. *See, e.g., Providence & New York S.S. Co. v. Hill Mfg. Co.,* 109 U.S. 578, 3 S.Ct. 379, 27 L.Ed. 1038 (1883); *Gregory v. Mucho K, Inc.,* 438 F.Supp. 1117 (D.C.Fla.1977). Therefore, it is appropriate and necessary for this Court in this limitation proceeding to decide questions of limitation plaintiff's liability for claims brought in this action. The protection of the Limitation Act will come into play during the damages stage of this proceeding. Limitation plaintiff's position is thus without merit.

*III. Conclusion*

The Court finds there are no genuine issues of material fact as to whether limitation plaintiff is liable to the State of New Jersey for cleanup costs and civil penalties under the New Jersey Spill Compensation and Control Act. The Court further finds that the record raises no genuine issues of material fact as to limitation plaintiff's liability to New Jersey for civil penalties both under the Water Pollution Control Act and under N.J.S.A. § 23:5–28. The Court will determine the appropriate amount of limitation plaintiff's liability to the State of

or otherwise unintentional act. Specifically, the Act addresses knowing, willful or intentional violations of the statute, and provides for criminal penalties in such cases. N.J.S.A. 58:10A–10f.

New Jersey for cleanup costs and civil penalties in subsequent proceedings.

An Order consistent with this Memorandum Opinion shall issue.